# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3639

_____

Michael Nichols,                                    *
                                                    *
            Appellant,                              *
                                                    *
      v.                                            *
                                                    *
Michael Bowersox; Jeremiah (Jay)                    *
Nixon, Attorney General of the State                *
of Missouri,                                              *
                                                    *
            Appellees.                              *

_____                          Appeals from the United States
                                     District Court for the
No. 97-3640                          Western District of Missouri

_____

Richard L. Crane,                                   *
                                                    *
            Appellant,                              *
                                                    *
      v.                                            *
                                                    *
Dave Dormire, Superintendent;                       *
Jeremiah (Jay) Nixon, Attorney                      *
General, State of MO,                               *
                                                    *
            Appellees.                              *

_____

Submitted: September 23, 1998

Filed: April 13, 1999
_____

Before BOWMAN, Chief Judge, and McMILLIAN, RICHARD S. ARNOLD, FAGG, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, MURPHY and KELLY,[1] Circuit Judges, En Banc.
_____

McMILLIAN, Circuit Judge.

In these consolidated cases, Michael Nichols and Richard L. Crane (together referred to as "petitioners") appeal from final judgments entered in the United States District Court for the Western District of Missouri dismissing their respective petitions for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254. Nichols v. Bowersox, No. 97-0666-CV-W-3-P (W.D. Mo. Aug. 20, 1997); Crane v. Dormire, No. 97-0673-CV-W-3-P (W.D. Mo. Aug. 20, 1997). For reversal, they argue that the district court erred in dismissing their petitions as untimely filed under the one-year period of limitation imposed by 28 U.S.C. § 2244(d), which was enacted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In an earlier proceeding, a divided panel of this court reversed the judgments of the district court and remanded each case to the district court for further proceedings. However, this court subsequently vacated the panel opinion and granted the suggestion for rehearing *en banc* filed by Michael Bowersox and Dave Dormire (together referred to as "respondents"). Upon consideration by the full court and for the reasons stated

_____

[1]The Honorable John D. Kelly passed away on October 21, 1998. This opinion is consistent with his vote at the en banc conference following oral argument on September 23, 1998.

below, we reverse the judgments of the district court and remand for further proceedings consistent with this opinion.

Jurisdiction in the district court was based upon 28 U.S.C. §§ 1331, 2254. Jurisdiction in this court is based upon 28 U.S.C. §§ 1291, 2253(a).

## Background

*Nichols v. Bowersox*

Petitioner Nichols is currently serving, among other sentences, a sentence of life imprisonment without the possibility of parole for first degree murder. He was convicted of first degree murder in the Circuit Court of Jackson County, Missouri, and his conviction was affirmed on appeal by the Missouri Court of Appeals on February 20, 1996. State v. Nichols, 915 S.W.2d 795 (Mo. Ct. App. 1996) (per curiam). Nichols did not file a petition for a writ of certiorari in the United States Supreme Court. The mandate in his criminal case issued on April 11, 1996.

Nichols, acting *pro se*, filed his § 2254 petition for a writ of habeas corpus through the prison mail system. He signed the petition on April 21, 1997. It was "provisionally filed" by the district court clerk's office on April 28, 1997. On May 30, 1997, the district court dismissed Nichols' petition for failure to correct technical defects. On June 16, 1997, the district court reopened the case, denied Nichols leave to proceed *in forma pauperis*, and ordered him to pay the filing fee. Nichols paid the filing fee, which was received by the district court on July 15, 1997. In the meantime, respondent Bowersox moved to dismiss the petition as untimely filed under 28 U.S.C. § 2244(d). On August 19, 1997, the district court granted Bowersox's motion to dismiss. The district court issued a certificate of appealability on the question of "whether the prison mailbox rule announced in Houston v. Lacks,

-3-

487 U.S. 266 (1988), should now apply to the filing of habeas corpus petitions."[2] Nichols appealed.

### Crane v. Dormire

Petitioner Crane was convicted on December 3, 1992, in the Circuit Court of Jasper County, Missouri, of second degree burglary and stealing and was sentenced to prison terms of twenty years and one year, respectively. The Missouri Court of Appeals affirmed his conviction on June 28, 1994. The mandate in his criminal case issued on July 14, 1994.

Crane, acting *pro se*, filed his § 2254 petition for a writ of habeas corpus through the prison mail system. He signed the petition on April 20, 1997. It was "provisionally filed" by the district court clerk's office on April 29, 1997. On June 30, 1997, the district court granted Crane leave to proceed *in forma pauperis*. On July 14, 1997, respondent Dormire moved to dismiss Crane's petition as untimely

---

[2]We note that, when this case was originally argued before the panel, respondents disputed jurisdiction in the court of appeals on the ground that petitioners had failed to make a substantial showing of a denial of a constitutional right, as required under 28 U.S.C. § 2253(c)(2), and therefore the certificate of appealability was improvidently granted. Although respondents did not reassert that argument when this case was reheard by our court *en banc*, we believe that the jurisdictional question warrants some discussion. Upon careful consideration, we conclude that § 2253(c)(2) does not preclude us from exercising jurisdiction in the present case. We do not think § 2253(c) is intended to preclude all review of preliminary procedural issues, such as the limitations question now before us. We read § 2253(c) as addressing only the sort of showing required for a petitioner to obtain appellate review of the merits of his or her claims for habeas corpus or § 2255 relief. Otherwise, a final order entered by a district court based upon a question antecedent to the merits, if adverse to the petitioner, could never be reviewed on appeal. While we assume Congress has the power to establish such a regime, we do not think it intended to do so when it enacted the AEDPA.

-4-

filed under 28 U.S.C. § 2244(d). The district court granted Dormire's motion to dismiss on August 19, 1997. The district court issued a certificate of appealability on the question of "whether the prison mailbox rule announced in Houston v. Lacks, 487 U.S. 266 (1988), should now apply to the filing of habeas corpus petitions." Crane appealed.

## Discussion

*Section 2244(d)*

On April 24, 1996, a one-year period of limitation for filing habeas petitions went into effect as part of the AEDPA. 28 U.S.C. § 2244(d). The statute provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

-5-

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Prior to the 1996 enactment of the AEDPA, no statutory period of limitation was imposed for filing habeas petitions in federal court pursuant to § 2254.[3]

*Determination of triggering date under § 2244(d)(1)(A)*

The one-year limitation period imposed by 28 U.S.C. § 2244(d)(1) begins to run on the latest of several possible triggering dates. For both Nichols and Crane, the relevant triggering date is that which is described in § 2244(d)(1)(A) as "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In Smith v. Bowersox, 159 F.3d 345, 348 (8th

---

[3]Prior to the 1996 enactment of the AEDPA, the time available to file a § 2254 petition was not entirely without limitation, however. Such petitions were subject to traditional equitable doctrines such as laches, as well as the following rule adopted in 1976.

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Rules Governing Section 2254 Cases, Rule 9(a); see also id. advisory committee's notes.

Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 1133 (1999), § 2244(d)(1)(A) was interpreted by a panel of this court as follows:

> the running of the statute of limitations imposed by § 2244(d)(1)(A) is triggered by either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ.

The <u>Smith</u> decision was filed one month after the present case was argued and submitted to the court *en banc*. Now, in light of <u>Smith</u>, we will consider the dates on which Nichols' and Crane's respective state court judgments became final within the meaning of § 2244(d)(1)(A). The record in this case indicates that neither Nichols nor Crane filed a petition for a writ of certiorari in the United States Supreme Court. <u>See</u> Respondents' Appendix at 1, 52. According to <u>Smith</u>, the dates on which the judgments became final within the meaning of § 2244(d)(1)(A) are therefore determined by "the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ [of certiorari]." <u>Id.</u> Thus, each petitioner's state court judgment became final under § 2244(d)(1)(A) upon the expiration of his time to file a petition for a writ of certiorari.

Rule 13 of the Supreme Court Rules provides in relevant part:

> Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary

review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.

Based upon the information contained in the record, and taking into account Smith and Supreme Court Rule 13, we can say with certainty that Nichols' judgment became final within the meaning of § 2244(d)(1)(A) no earlier than May 20, 1996, exactly 90 days after his conviction was affirmed on direct appeal. Accordingly, Nichols had at least until midnight on May 19, 1997, in which to file his petition for a writ of habeas corpus under the terms of 28 U.S.C. § 2244(d)(1)(A). See Smith, 159 F.3d at 348 (Supreme Court's denial of plea for writ of certiorari on November 3, 1997, began running of statute of limitations, meaning petitioner had until midnight on November 2, 1998, to petition for habeas corpus relief in federal court). Crane, on the other hand, was convicted in state trial court in 1992. His conviction was affirmed by the state court of appeals on June 28, 1994, and the mandate in his criminal case issued on July 14, 1994. Therefore, we can say with certainty that his judgment became final within the meaning of § 2244(d)(1)(A) well before the AEDPA became effective on April 24, 1996.

*Grace period rule*

Believing that the state court judgment against each petitioner became final prior to the effective date of the AEDPA, the district court assumed for purposes of applying § 2244(d)(1)(A) that each of them had one year after the effective date of the AEDPA in which to file his habeas petition. In other words, the district court adopted a one-year grace period for the filing of habeas petitions in all cases where the state court judgment became final before April 24, 1996. As explained above, it now turns out that Nichols' state court judgment did not become final before the effective date of the AEDPA. Thus, the question of whether or not a one-year grace period should apply is now moot with respect to him. However, the grace period rule

-8-

remains a relevant issue in Crane's case because, as noted above, the judgment in his state criminal case became final prior to April 24, 1996. Upon careful *en banc* review, we now hold that the district court did not err in applying a one-year grace period for the filing of Crane's habeas corpus petition.

> When application of a new limitation period would *wholly eliminate* claims for substantive rights or remedial actions considered timely under the old law, the application is impermissibly retroactive. The legislature cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action. Indeed, the Supreme Court has stated that newly-enacted statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.

Brown v. Angelone, 150 F.3d 370, 373 (4th Cir. 1998) (Angelone) (citations and internal quotation marks omitted). In our opinion, a reasonable time after the effective date of the AEDPA for allowing suits to commence upon pre-existing causes of action is one year. Accord id. (holding that the "reasonable time" required and the one-year statutory period "coalesce") (quoting Lindh v. Murphy, 96 F.3d 856, 866 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997)); United States v. Flores, 135 F.3d 1000, 1002-06 (5th Cir. 1998) (holding that one year is "reasonable period" for purposes of § 2255 grace period), cert. denied, 119 S. Ct. 846 (1999). The courts of appeals which have addressed this issue have agreed with the application of a one-year grace period, although they have been divided on the question of whether the grace period ends on April 23, 1997, or April 24, 1997. Compare, e.g., Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998) (applying April 24 deadline); Ross v. Artuz, 150 F.3d 97, 99-103 (2d Cir. 1998) (applying April 24 deadline and clarifying Peterson v. Demskie, 107 F.3d 92 (2d Cir. 1997)), with Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998) (applying April 23 deadline); Calderon v. United States District Court, 128 F.3d 1283, 1287 (9th Cir. 1997)

(applying April 23 deadline), <u>cert. denied</u>, 118 S. Ct. 899 (1998); <u>United States v. Simmonds</u>, 111 F.3d 737, 746 (10th Cir. 1997) (applying April 23 deadline); <u>Lindh v. Murphy</u>, 96 F.3d at 866 (applying April 23 deadline).  In order to dispose of the issues in Crane's appeal, it is not necessary for us to decide whether the grace period ended precisely on April 23, 1997, or April 24, 1997.  Accordingly, we hold that a one-year filing grace period, beginning on April 24, 1996, shall apply for habeas petitions where the relevant triggering date under 28 U.S.C. § 2244(d)(1) precedes April 24, 1996 (but we leave for another day the April 23-versus-April 24 deadline issue).

*Prison mailbox rule*

We now turn to the more difficult issue presented by these appeals: whether or not the petitions were timely filed – that is, whether they were "filed" within the meaning of 28 U.S.C. § 2244(d) on or before the applicable deadlines.  Uncontradicted evidence in the record indicates that petitioners deposited their petitions in their respective prison mail systems on the same day that they signed their petitions.  Assuming that to be true for purposes of respondents' motions to dismiss, Nichols and Crane would have deposited their petitions in the prison mail systems on April 21 and April 20, 1997, respectively.  Based upon the dates on which their petitions were "provisionally filed," the district court clerk's office presumably received Nichols' and Crane's petitions on April 28 and April 29, 1997, respectively.  Moreover, after being denied leave to proceed *in forma pauperis*, Nichols did not pay his filing fee until July 15, 1997.  Crane obtained leave to proceed *in forma pauperis* on June 30, 1997.  Our determination of whether Nichols and Crane timely filed their petitions under § 2244(d) therefore depends on whether, for purposes of that statutory provision, a petition is deemed filed on the date it is deposited in the prison mail system, the date it is received by the district court clerk's office, or the date of some other event such as the payment of the filing fee or the district court's granting of leave to proceed *in forma pauperis*.

-10-

Petitioners have urged this court to apply the "prison mailbox rule" which, as the name suggests, would establish the date of filing as the date on which the prisoner puts the proverbial "letter" in the proverbial "mailbox" – in other words, the date on which he or she deposits the petition in the prison mail system. The prison mailbox rule traditionally and appropriately applies only to *pro se* inmates who may have no means to file legal documents except through the prison mail system. That requirement is no impediment to the application of the prison mailbox rule in this case because each petitioner filed his habeas petition *pro se*.

In Houston v. Lack, 487 U.S. 266 (1988), the Supreme Court applied the prison mailbox rule to a notice of appeal from a federal district court's judgment denying habeas relief. The Supreme Court held that a *pro se* prisoner's notice of appeal is "filed," for purposes of the applicable filing deadline, at the moment of delivery to prison authorities for forwarding to the district court.[4] In the cases at bar, however, the district court reluctantly concluded that it could not apply the prison mailbox rule to petitioners' habeas filings in light of our pre-AEDPA decision in Allen v. Dowd, 964 F.2d 745, 746 (8th Cir. 1992). In Allen v. Dowd, the petitioner sought to bring a § 2254 habeas action in 1990, to challenge his 1982 conviction. After waiting some eight years after the conviction, and with only five days of the relevant sentence remaining, he placed his *pro se* habeas petition in the prison mail system. The petition was not received by the district court until after the sentence had been completed. On appeal, a panel of this court rejected the petitioner's argument that the prison mailbox rule should be applied to preserve the timeliness of the filing. This court held that the petition was filed on the date it was received by the district court and the petitioner was therefore not "in custody" on the relevant sentence at the time

[4]In 1993, five years after the Supreme Court's decision in Houston v. Lack, 487 U.S. 266 (1988), Rule 4 of the Federal Rules of Appellate Procedure was amended by the addition of subsection (c), substantially codifying the rule of Houston v. Lack. Now, as a result of a 1998 amendment, a more detailed version of the rule is contained in Rule 4(c)(1) of the Federal Rules of Appellate Procedure.

his § 2254 petition was filed. In rejecting the petitioner's invitation to extend the holding in Houston v. Lack to the case before it, this court reasoned: "Lack is limited to notices of appeal, which have a 30-day deadline under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1). This case does not concern a notice of appeal or other filing with a 30-day deadline." Allen v. Dowd, 964 F.2d at 746 (citations omitted). The panel then continued: "Moreover, this court has recently held that filing does not occur in a habeas case until the petitioner has either paid the filing fee or been granted leave to proceed *in forma pauperis*." Id. (citing Weaver v. Pung, 925 F.2d 1097, 1099 (8th Cir.), cert. denied, 502 U.S. 828 (1991)).

We granted the suggestion for rehearing *en banc* in the present case in part to address the meaning and vitality of Allen v. Dowd following the enactment of the AEDPA. Under this new regime, we now hold that Allen v. Dowd is no longer viable to the extent that it may be read as inconsistent with the application of the prison mailbox rule to a habeas petition filing that is governed by 28 U.S.C. § 2244(d).

The Supreme Court's rationale in Houston v. Lack, explaining the extension of the prison mailbox rule to the 30-day deadline for filing notices of appeal in habeas cases, is most instructive in the present context. In Houston v. Lack, the Supreme Court reasoned:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. . . . Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. . . . Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of

-12-

proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities – and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

487 U.S. at 270-72.

In discussing the policy grounds for the application of the prison mailbox rule in that case, the Supreme Court observed:

The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox – he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one. Relying on the date of receipt, by contrast, raises such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped "filed" on one date was actually received earlier.

Id. at 275 (footnote omitted). In the prison context, the Supreme Court went on to observe, the policy arguments favoring the mailbox rule are all the more compelling because if, for example, a dispute should arise over whether the prison was dilatory,

[t]he prison will be the only party with access to at least some of the evidence needed to resolve such questions – one of the vices the general

-13-

rule is meant to avoid – and evidence on any of these issues will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay.

Id. at 276.

Because we now have a one-year limitation period for filing habeas petitions, whereas before the enactment of the AEDPA there was no statutory limitation period at all, we believe that the Supreme Court's reasoning in Houston v. Lack applies with virtually equal force to the issue presently before us.

Respondents nevertheless maintain that application of the "prison mailbox rule" to petitioners' § 2254 *pro se* petitions would directly conflict with Rule 3 of the Rules Governing Section 2254 Cases, which were promulgated by the Supreme Court and approved by Congress in 1976. Respondents argue that Rule 3 is not merely procedural but, in fact, defines what is required for a habeas petition to be deemed "filed." They highlight the language in Rule 3(a) that a § 2254 petition "shall be filed in the office of the clerk of the district court" and the language in Rule 3(b) stating that the clerk of the district court "shall file the petition" and enter it on the court's docket "[u]pon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed *in forma pauperis*, and having ascertained that the petition appears on its face to comply with rules 2 and 3 [of the Rules Governing Section 2254 Cases]." Respondents therefore conclude that a prisoner's *pro se* habeas petition is not filed, for purposes of applying 28 U.S.C. § 2244(d), until the clerk of the district court has received the petition, has received the filing fee or an order granting leave to proceed *in forma pauperis*, and has ascertained that the petition appears on its face to comply with Rules 2 and 3 of the Rules Governing Section 2254 Cases. In support of this argument, respondents also emphasize the facts that

-14-

Congress did not amend Rule 3 at the time it enacted the AEDPA in 1996 nor has Congress amended Rule 3 in the few years since then.

We disagree with respondents' construction of Rule 3 of the Rules Governing Section 2254 Cases. We note that a similar question of interpretation was addressed by the Supreme Court in Houston v. Lack, 487 U.S. at 272-73, when the Court considered whether the prison mailbox rule could be applied to the filing of a *pro se* prisoner's notice of appeal consistent with Rule 3(a) of the Federal Rules of Appellate Procedure ("[a]n appeal permitted by law as of right from a district court to a court of appeals shall be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4") and Rule 4(a)(1) of the Federal Rules of Appellate Procedure ("the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of judgment or order appealed from"). Notably, the Supreme Court concluded that those rules of appellate procedure were not an obstacle to the application of the prison mailbox rule. The Supreme Court explained:

> Rules 3(a) and 4(a)(1) . . . specify that the notice should be filed "with the clerk of the district court." There is, however, no dispute here that the notice must be directed to the clerk of the district court – delivery of a notice of appeal to prison authorities would not under any theory constitute a "filing" unless the notice were delivered for forwarding to the district court. The question is one of timing, not destination: whether the moment of "filing" occurs when the notice is delivered to the prison authorities or at some later juncture in its processing. [Rules 3(a) and 4(a)(1)] are not dispositive on this point, for neither Rule sets forth criteria for determining the moment at which the "filing" has occurred.

Id. at 272-73 (citing Fallen v. United States, 378 U.S. 139, 144 (1964) (Stewart, J., joined by Clark, Harlan, and Brennan, JJ., concurring) (concluding that the mailbox

rule should apply to *pro se* prisoner's filing of notice of appeal from judgment of conviction, under former Rule 37(a) of the Federal Rules of Criminal Procedure, which is now substantially contained in Rule 4(b) of the Federal Rules of Appellate Procedure)).

Similarly, we hold that Rule 3 of the Rules Governing Section 2254 Cases is not dispositive in the present case. As noted above, Rule 3(a) instructs the habeas petitioner that the petition "shall be filed in the office of the clerk of the district court"; Rule 3(b) further instructs the clerk of the district court to file the petition "[u]pon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed *in forma pauperis*, and having ascertained that the petition appears on its face to comply with rules 2 and 3." These rules therefore tell the petitioner *where* to send the petition and tell the clerk's office *how* to process the petition once received. They do not, however, address the question now before us, which is whether, for purposes of applying the one-year period of limitation imposed by § 2244(d), the moment of filing occurs when the petition is delivered to the prison authorities or upon some later event. The Rules Governing Section 2254 Cases are not dispositive on this particular question because neither Rule 3(a) nor Rule 3(b) was ever intended by Congress to set forth the criteria for determining *when* that moment of filing has occurred. Indeed, at the time Rule 3 was adopted, no statutory limitation period for § 2254 habeas petitions existed. Therefore, it would be illogical to assume that Congress intended at that time for Rule 3 to set forth criteria for determining when a petition would be deemed "filed" for purposes of applying a statutory limitation period.

Moreover, the mere fact that Congress has not amended Rule 3 to specifically incorporate the prison mailbox rule for the filing of habeas petitions – as Congress so amended Rule 4(c) of the Federal Rules of Appellate Procedure five years after the Supreme Court's ruling in Houston v. Lack – also is not dispositive. If Congress did not originally intend for Rule 3 to set forth the criteria for determining when a

-16-

petition would be deemed "filed" for purposes of applying a statutory limitation period, it certainly cannot be inferred that Congress intended to *preserve* any such criteria simply because Congress failed to amend Rule 3.  Nor is there any evidence in the legislative history or elsewhere to suggest that, at the time the AEDPA was enacted, Congress intended that henceforth Rule 3 would have the legislative effect of setting forth the criteria for determining the moment at which a petition is to be deemed filed for purposes of applying the newly enacted one-year limitation period.

In sum, we hold that, for purposes of applying 28 U.S.C. § 2244(d), a *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court.[5]  Accordingly, Nichols and Crane each timely filed his § 2254 petition for habeas corpus relief in the district court.

## Conclusion

For the reasons set forth above, we reverse the judgments of the district court dismissing the petitions as untimely filed.  These consolidated cases are remanded to the district court for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

---

[5]For the sake of consistency, we adopt the same requirements for this type of filing by a *pro se* inmate as applies to notices of appeal pursuant to Rule 4(c)(1) of the Federal Rules of Appellate Procedure.   Accordingly, a *pro se* inmate's § 2254 petition is timely filed "if it is deposited in the institution's internal mail system on or before the last day for filing"; moreover, "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule."  See Fed. R. App. P. 4(c)(1) (effective Dec. 1, 1998).

I believe this court has no jurisdiction to decide the issues considered in this matter.  The applicants have failed to make the substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  Thus, the certificates of appealability issued by the district court were improvidently granted. As noted in footnote 2 of its opinion, <u>supra</u> at 4, the court simply rewrites section 2253(c)(2), contending that Congress could not have "intended to" say what it very clearly says and had full authority to say.  With this approach, I disagree.

If I were to reach the merits, I would affirm.  In this case, we deal with facts, rules and policies far different than those considered by the Supreme Court in <u>Houston v. Lack</u>, 487 U.S. 266 (1988).  Accordingly, I would affirm this case upon the well-reasoned opinion of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent.  The statute under which the court purports to exercise jurisdiction in these cases provides that no appeal can be taken from a "final order" in a habeas case unless "the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2); *see also* 28 U.S.C. § 2253(c)(1)(B).  It is indisputable and undisputed that the district court has entered a "final order" in these cases and that the applicants have not "made a substantial showing of a denial of a constitutional right."

Despite the plain wording of the statute, the court proceeds to decide these cases in the professed belief, for reasons that it does not disclose, that Congress could not have intended to foreclose appeals when a district court entered a final order in a habeas case on a question antecedent to the merits.  I have no similar difficulty with the statute:  The whole point of the AEDPA and the PLRA was to reduce the incidence of prisoner litigation in federal courts because of widespread public

dissatisfaction with the criminal justice system. Since the statute's objective is advanced by reducing the number of appeals in habeas cases, there is no reason to wonder why Congress would want to do that. More importantly, ours is not to wonder why: The statute rather plainly forecloses the appeal, and we ought simply to read its words and apply them.

There is, moreover, a construction of the statute that would allow a habeas petitioner an appeal even if the final order in his or her case is entered on a matter preliminary to the merits. A requirement that the prisoner make some kind of abbreviated showing on the merits (perhaps in an appropriate case accompanied by an offer of proof) before he or she can take an appeal, even on a matter unconnected with the merits, is a perfectly rational (if rather cumbersome) one. The court does not even consider this possible construction of the statute and proceeds to judgment in the face of what seems to me to be an unmistakable jurisdictional barrier.

I would therefore dismiss these cases for lack of jurisdiction.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.