**David P. PRATT, Petitioner, Appellant,**

v.

**UNITED STATES of America,
Respondent, Appellee.**

No. 97–1579.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1997.

Decided Nov. 6, 1997.

Leo T. Sorokin, Federal Defender Office, Boston, MA, for appellant.

Peter E. Papps, First Assistant United States Attorney, Concord, NH, with whom Paul M. Gagnon, United States Attorney, was on brief, for appellee.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

SELYA, Circuit Judge.

Petitioner-appellant David P. Pratt, who is currently serving a federal sentence, filed a second petition for post-conviction relief under 28 U.S.C. § 2255 (1994 and Supp.1996).[1] Relying on the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified in scattered sections of 28 U.S.C.), the district court dismissed the petition *pro forma* because Pratt had not obtained clearance from the court of appeals. AEDPA's novelty, together with the odd timing and peculiar circumstances of the petitioner's case, take us down a sometimes recondite legal trail. In the end, we conclude that AEDPA applies here and that, properly construed, it bars Pratt's attempt to prosecute a second habeas petition.

## I. BACKGROUND

In April of 1994, a federal petit jury in the District of New Hampshire heard testimony that, after a local police chief confiscated several of Pratt's firearms, Pratt sent him a mutilated pig carcass. Weighing this and other evidence, the jury found Pratt guilty of mailing a threatening communication in violation of 18 U.S.C. § 876 (1994). The judge departed upward and sentenced Pratt to a lengthy prison term. The appeal period expired and Pratt's conviction became final.

After unsuccessfully moving pro se to file a tardy notice of appeal, Pratt filed his first section 2255 petition on March 9, 1995. He alleged a violation of his Sixth Amendment right to the effective assistance of counsel premised on a claim that, despite repeated requests, his trial attorney had failed to perfect a timeous appeal of the conviction. Pratt did not aver, however, that his attorney's performance at trial was constitutionally defective. The district court granted the petition in an unpublished order, vacated the judgment, and after appointing fresh counsel resentenced Pratt (thus triggering a new appeal period). Pratt's new lawyer filed a timely appeal, but to no avail; a panel of this court affirmed the conviction. *See United States v. Pratt*, 73 F.3d 450, 454 (1st Cir. 1996).[2]

On January 17, 1997, Pratt filed his second section 2255 petition, this time seeking to set aside his conviction on the ground that his original lawyer's lack of trial acumen violated Pratt's Sixth Amendment right to the effective assistance of counsel. On April 8, 1997, the district court dismissed this petition without prejudice for failure to comport with AEDPA's "prior approval" prerequisite for second or successive habeas petitions. This appeal ensued.

## II. ANALYSIS

AEDPA took effect on April 24, 1996, after the district court resolved Pratt's initial ha-

---

1. In terms, 28 U.S.C. § 2255 speaks of a "motion" rather than a "petition," yet the latter word is more commonly used to describe the vehicle by which a person held in custody seeks postconviction relief. Although there may be occasions on which the terms have different meanings, this is not one of them; and, therefore, we use the term "petition" throughout this opinion in order to avoid confusion. By the same token, we use the terms "section 2255 petition," "habeas petition," and "petition for post-conviction relief" interchangeably.

2. The panel did, however, remand, while retaining appellate jurisdiction, to obtain a clear statement of the reasons underlying the upward departure. *See Pratt*, 73 F.3d at 453–54. After Judge McAuliffe released an explanatory statement, *see United States v. Pratt*, 940 F.Supp. 424 (D.N.H.1996), the panel issued an unpublished order dated August 8, 1996, making the affirmance unconditional.

beas petition but before his second petition eventuated. The new law imposes significant restrictions on second or successive habeas petitions brought on behalf of federal prisoners. These restrictions have both procedural and substantive dimensions. Procedurally, AEDPA incorporates by reference in section 2255 the same screen that AEDPA makes applicable to second or successive habeas petitions prosecuted on behalf of persons being held in state custody. The statute thus requires a federal prisoner, before docketing a second or successive habeas petition in the district court, to obtain from "the appropriate court of appeals ... an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A) (as incorporated in 28 U.S.C. § 2255); *see also Felker v. Turpin,* —— U.S. ——, ——, 116 S.Ct. 2333, 2337, 135 L.Ed.2d 827 (1996). Substantively, AEDPA directs the court of appeals to condition its authorization of a second or successive petition on the applicant's showing of either:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

This appeal necessitates that we determine whether Pratt's second section 2255 petition comes within AEDPA's reach, and if so, whether the statute permits us to authorize further proceedings in the district court. Before pursuing either of these inquiries, however, we pause to address the government's contention that this court lacks jurisdiction to hear the instant appeal.

**A.**

In the proceedings below, the district court dismissed Pratt's second habeas petition without prejudice, noting that he had failed to obtain clearance from the court of appeals as required by AEDPA. The government contends that, inasmuch as the order is not dispositive of any issue, it is not a "final order," 28 U.S.C. § 1291 (1994), and thus cannot support the weight of an appeal. The government is wrong.

AEDPA's prior approval provision allocates subject-matter jurisdiction to the court of appeals by stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward. *See Nunez v. United States,* 96 F.3d 990, 991 (7th Cir.1996). This statutory directive means that a district court, faced with an unapproved second or successive habeas petition, must either dismiss it, *see id.,* or transfer it to the appropriate court of appeals,[3] *see Benton v. Washington,* 106 F.3d 162, 164 (7th Cir.1996); *Liriano v. United States,* 95 F.3d 119, 122–23 (2d Cir.1996). The court below chose the former course.

If Pratt had acknowledged that AEDPA governed his latest petition, the district court's decision might not have been appealable. Here, however, Pratt disputes AEDPA's applicability. He can regain access to the district court (and thereby vindicate his theory) only by an appeal and a subsequent holding that the district court erred in applying AEDPA to his latest petition. The district court's order is therefore final in the relevant sense, *see In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.,* 982 F.2d 603, 608 (1st Cir.1992) (explaining that section 1291's finality requirement has a practical cast), and it is appealable. That the district court's dismissal was without prejudice is of no moment. Appellate courts routinely exercise jurisdic-

---

3. Transfers can be accomplished by resort to a statute that provides in pertinent part:

Whenever a civil action is filed in a court ... or an appeal ... is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (1994).

tion over claims dismissed without prejudice when the dismissal contains sufficient indicia of finality. *See, e.g., Presbytery of N.J. v. Florio,* 40 F.3d 1454, 1461 (3d Cir.1994); *Kobleur v. Group Hospitalization & Med. Services, Inc.,* 954 F.2d 705, 708 (11th Cir. 1992); *Brady v. Sullivan,* 893 F.2d 872, 876 n. 8 (7th Cir.1989); *Local Div. No. 714 v. Greater Portland Transit Dist.,* 589 F.2d 1, 6 (1st Cir.1978).

To be sure, Pratt also contends that even if AEDPA applies generally to cases in the same temporal posture its provisions do not bar his pursuit of post-conviction relief. To this extent, the government's jurisdictional jousting may hit closer to home. Nevertheless, we need not spend much time on this largely metaphysical debate. In very similar circumstances, the Seventh Circuit has crafted a pragmatic approach to this sort of problem. It has declared that it will treat a notice of appeal as a request for an authorization to file a second section 2255 petition and thus preserve appellate jurisdiction if doing so will save unnecessary paperwork without sacrificing any party's substantial rights. *See Nunez,* 96 F.3d at 991.

■ Pratt invites us to employ that approach here, the appellate record is adequate to the task, and taking this avenue expedites adjudication of the matters in issue. We therefore hold that, when a district court dismisses a second or successive petition without prejudice because the court of appeals has not approved its prosecution, and the petitioner appeals, the court of appeals may in its discretion treat the notice of appeal as a request for authorization to file a second or successive petition. We exercise that discretion here to the extent, if at all, that it may be necessary to do so. Either way, we have jurisdiction to hear and determine the issues raised in Pratt's appeal.

### B.

The filing dates of Pratt's two section 2255 petitions straddle AEDPA's effective date. On this basis, Pratt maintains that the question whether the statute applies to his second petition must be answered in the negative because doing so would place an impermissi-

ble retroactive burden on his first petition. We disagree.

We begin our analysis by remarking the obvious: applying a statute to a pleading that was filed after the statute's effective date is not really a "retroactive" application in the classic sense. Here, moreover, we know on the best of authority that Congress intended that AEDPA apply to all section 2255 petitions filed after its effective date (April 24, 1996). *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

We know, too, that the Supreme Court recently and uncritically applied AEDPA to a prisoner's second habeas petition even though the prisoner had filed his first petition prior to AEDPA's enactment. *See Felker,* at —— – ——, 116 S.Ct. at 2336–37. Several courts of appeals have followed suit. *See, e.g., In re Medina,* 109 F.3d 1556, 1561–62 (11th Cir.1997); *Roldan v. United States,* 96 F.3d 1013, 1014 (7th Cir.1996); *Hatch v. Oklahoma,* 92 F.3d 1012, 1014 (10th Cir. 1996). This approach is sound not only from a legal perspective but also from the standpoint of common sense. After all, if pre-AEDPA jurisprudence somehow attached to an entire course of post-conviction proceedings by virtue of a prisoner's having filed a pre-enactment petition at some point along the way, then the Court's opinion in *Felker* would be drained of all meaning.

Faced with these formidable obstacles, Pratt attempts to refocus the definition of retroactivity. He reminds us of the Supreme Court's directive that a court which confronts a possible retroactivity problem should ask whether a freshly minted statute "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). Wielding this club, Pratt asserts that the application of AEDPA to his second petition impermissibly alters the legal consequences of his first petition (which was fully adjudicated prior to AEDPA's passage). This argument, in turn, leads him to embrace the "mouse-trapping" doctrine. *See Burris v. Parke,* 95 F.3d 465, 468–69 (7th Cir.1996). Based on this construct (which to our knowledge has

not been adopted outside the Seventh Circuit), he argues that, even if AEDPA otherwise might control his second habeas petition, it should not do so in the circumstances of this case.[4]

The particulars of Pratt's claim are fuzzy. He appears to be saying, with minimal elaboration, that the district court would have entertained his second section 2255 petition under the prevailing pre-AEDPA standard, *see McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991) (discussing the parameters of the "abuse of the writ" principle), and so, application of AEDPA's more stringent standard to his second section 2255 petition will attach new and unforeseen legal consequences to the filing of his first petition (in effect penalizing him retroactively for having failed to include all possible constitutional claims in his first petition). In Pratt's view, this adverse effect on his post-conviction litigation strategy "mousetraps" him.

■ Even were we to address the mousetrapping doctrine—a matter that we leave for another day—Pratt could not take advantage of it. The doctrine requires a habeas petitioner to show that he consciously chose to withhold a potential ground for relief from his first petition because he detrimentally relied upon pre-AEDPA law. *See, e.g., Alexander v. United States,* 121 F.3d 312, 314 (7th Cir.1997); *Roldan,* 96 F.3d at 1014; *see also In re Magwood,* 113 F.3d 1544, 1552–53 (11th Cir.1997). Pratt cannot carry this burden. Although he states perfunctorily that he "relied upon the abuse of the writ law as it existed when he filed his [original] § 2255" petition, he offers no legal or factual support for this conclusory statement. More is need-

ed. *See In re Medina,* 109 F.3d at 1562 n. 1 (holding that a petitioner's "one-sentence conclusory statement" did not establish detrimental reliance).

More important than Pratt's subjective understanding is the utter lack of any facts remotely suggesting detrimental reliance. "In assessing detrimental reliance *vel non,* the test is one of objective reasonableness under the circumstances." *Henry v. Connolly,* 910 F.2d 1000, 1003 (1st Cir.1990). Accordingly, the question here is not whether Pratt actually believed, when he filed his first habeas petition, that then-prevailing law would allow him to file a second petition on the withheld ground of ineffective assistance of trial counsel so long as he could pass muster under *McCleskey;* the question, rather, is whether such a subjective belief, even if it existed, is objectively reasonable.

As a general matter, reliance upon pre-AEDPA law as a basis for permitting a second petition rarely will clear this hurdle. The "cause and prejudice" test that *McCleskey* imposed to screen out abusive deployments of the writ is notoriously difficult to pass. *See, e.g., McCleskey,* 499 U.S. at 500, 111 S.Ct. at 1473–74; *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *United States v. Shaid,* 937 F.2d 228, 236 (5th Cir.1991); *see generally* Erwin Chemerinsky, *Federal Jurisdiction* § 15.4.3, at 809–11 (2d ed.1994).[5] Pratt cannot satisfy its rigors.

The only reason that Pratt advances for exhuming his second habeas petition from the abuse of the writ graveyard is our statement in *Bonneau v. United States,* 961 F.2d 17, 23 (1st Cir.1992), to the effect that a prisoner who files a section 2255 petition in

---

4. This extra step is a necessary element of Pratt's position because an affirmative answer to the above-described *Landgraf* inquiry does not automatically render a statute impermissibly retroactive. To the contrary, the *Landgraf* Court warned that a "statute does not operate [retroactively] merely because it ... upsets expectations based on prior law." 511 U.S. at 269, 114 S.Ct. at 1499. A conclusion of retroactivity instead "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270, 114 S.Ct. at 1499.

5. Of course, the Seventh Circuit did make such a determination in *Burris,* 95 F.3d at 469–70. But there the court predicated its finding of detrimental reliance on the notion that the government had waived any abuse of the writ defense to a second habeas petition during proceedings directed at the resolution of the first petition. *See id.* In contrast, Pratt does not allege that any statement or conduct on the government's part lulled him into believing that it would condone a second section 2255 petition.

which he alleges that his attorney failed to perfect a direct appeal "must be treated like any other appellant appealing for the first time." But this statement has absolutely nothing to do with abuses of the writ; as *Bonneau* itself makes clear in the immediately succeeding sentence, the language on which Pratt relies only "means that [the section 2255 petitioner] does not have to show that there are meritorious issues to be appealed." *Id.* Because *Bonneau* merely restates the uncontroversial rule that a federal habeas petitioner who alleges a Sixth Amendment deprivation grounded in his attorney's failure to perfect a direct appeal need not prove actual prejudice, *see Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 354, 102 L.Ed.2d 300 (1988), the single sentence that Pratt wrests out of context fails to serve his ends.

With *Bonneau* out of the picture, Pratt's cupboard is bare; he has not proffered any other basis for a finding of detrimental reliance. Consequently, we have no occasion to consider the merits of the mousetrapping doctrine because Pratt's case does not come within its ambit. *Accord In re Magwood,* 113 F.3d at 1552–53 (distinguishing, but not endorsing, *Burris* ); *In re Medina,* 109 F.3d at 1562–63 (same).

To recapitulate, since Pratt has not shown that application of AEDPA to his second section 2255 petition works an impermissible retroactive effect, his second petition is, as a temporal matter, within AEDPA's jurisprudential reach. *See Lindh,* at ——, 117 S.Ct. at 2063.

### C.

■ Pratt has another string to his bow. He maintains that the instant petition is not "second or successive" within AEDPA's contemplation and, hence, is not subject to the new statutory restrictions.

Like prior habeas statutes, AEDPA does not define the mantra "second or successive." Courts that have interpreted the same phrase in relation to the pre-AEDPA version of 28 U.S.C. § 2244(b) have determined that a numerically second petition is not "second or successive" if it attacks a different crimi-

nal judgment or if the earlier petition terminated without a judgment on the merits. *See* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 28.3a, at 916–20 (2d ed.1994). We agree that AEDPA does not blunt the force of these interpretations, but we are not persuaded that the emergent rule pertains in the circumstances presented here.

### 1.

Decisions that construe the meaning of "second or successive" most frequently concern a court's dismissal of a prisoner's first habeas petition for failure to exhaust state remedies. *See, e.g., Howard v. Lewis,* 905 F.2d 1318, 1322–23 (9th Cir.1990); *Hill v. Lockhart,* 894 F.2d 1009, 1010 (8th Cir.1990) (en banc). Recent post-AEDPA cases have hewed to the line exemplified by *Howard* and *Hill* and have preserved the rule that if the original petition did not produce an adjudication on the merits a prisoner's later petition will not be deemed "second or successive." *See, e.g., In re Gasery,* 116 F.3d 1051, 1052 (5th Cir.1997); *Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997); *Dickinson v. Maine,* 101 F.3d 791, 791 (1st Cir.1996); *Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir.1996).

In a federal forum, habeas petitions that involve federal prisoners, 28 U.S.C. § 2255, differ from those that involve state prisoners, 28 U.S.C. §§ 2241–2254, in that the former are not constrained by an exhaustion requirement. *See* 2 Liebman & Hertz, *supra,* § 41.4a, at 1196. In particular, claims of ineffective assistance of counsel embodied in a section 2255 petition generally are not deemed procedurally defaulted simply because they were not raised on direct appeal. *See, e.g., United States v. Soldevila–Lopez,* 17 F.3d 480, 485 (1st Cir.1994); *United States v. Daniels,* 3 F.3d 25, 26–27 (1st Cir. 1993). The absence of a procedural bar opens an opportunity for overlap: a federal prisoner bent on asserting an ineffective assistance claim can simultaneously file a direct appeal of his conviction and a section 2255 petition, resulting in two federal courts concurrently reviewing the same judgment. To prevent such redundancy, we have ruled that except in extraordinary circumstances we

will dismiss a section 2255 petition claiming ineffective assistance of counsel as premature until the prisoner's direct appeal concludes. *See United States v. Diaz–Martinez,* 71 F.3d 946, 953 (1st Cir.1995); *United States v. Gordon,* 634 F.2d 638, 638–39 (1st Cir.1980).

Pratt seizes upon this body of authority and argues that, under it, the district court probably would have dismissed as premature his ineffective assistance of trial counsel claim had he asserted it in his original petition. Thus, Pratt theorizes, failure to raise the claim in the initial petition is no different, practically speaking, than if the court had dismissed it without deciding the merits. Based on that analogy, he posits that applying AEDPA's restrictions to pretermit his later petition produces a fundamentally unfair whipsaw effect.

We find Pratt's suppositional *ex post* justification for his failure to include the claim of ineffective assistance of trial counsel in his initial habeas petition unconvincing for two reasons. First, and most obviously, we have classified section 2255 petitions as premature only when the petitioner's direct appeal was still pending. *See, e.g., Diaz–Martinez,* 71 F.3d at 953; *Gordon,* 634 F.2d at 638–39. Because no appeal was pending in Pratt's case when he began his quest for collateral relief, the claim of ineffective assistance of trial counsel would not have been subject to dismissal as premature under our precedents. Second, even if an included ineffective assistance of trial counsel claim might have been sidetracked once the district court cleared the way for a direct appeal, *cf. United States v. DeFalco,* 644 F.2d 132, 137 (3d Cir.1979) (en banc), Pratt still had ample incentive to include the claim in his first petition. After all, he could not predict whether the district court would grant his original petition on the single ground that he actually asserted—ineffective assistance anent counsel's failure to file a timely appeal—

and, had the district court denied relief, Pratt could not have asserted an unpreserved claim either on appeal or in a second petition.[6]

We discern no unfairness in holding Pratt to this regimen. The requirement that all available claims be presented in a prisoner's first habeas petition is consistent not only with the spirit of AEDPA's restrictions on second and successive habeas petitions, but also with the preexisting abuse of the writ principle. The requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for a unitary presentation to the district court. This exercise advances the cause of judicial efficiency and further justifies barring Pratt's second petition. *See Richmond v. Ricketts,* 774 F.2d 957, 960 (9th Cir.1985).

### 2.

█ Pratt mounts yet another argument in support of his plea that we not treat his numerically second petition as "second or successive." This argument derives from the Rules Governing Section 2255 Proceedings—a set of rules that the Supreme Court has promulgated pursuant to congressionally delegated authority. *See* 28 U.S.C. § 2072 (1994). Like all similar federal rules, these rules carry the force and effect of positive law. *See Swazo v. Wyoming Dep't of Corrections State Penitentiary Warden,* 23 F.3d 332, 333 (10th Cir.1994); *see also McCoy v. Massachusetts Inst. of Tech.,* 950 F.2d 13, 21 (1st Cir.1991). Rule 2(c) provides in relevant part that a habeas petition "shall be limited to the assertion of a claim for relief against one judgment only of the district court."

AEDPA did not alter Rule 2(c), and the rule is potentially significant here because, after the district court granted Pratt's first section 2255 petition, it vacated Pratt's sentence and resentenced him in order to trig-

---

6. Although the existence of an incentive may affect the equitable balance, we note that, even in the absence of any incentive, the reported cases refuse to accept the position that Pratt espouses. For example, in *Martinez–Villareal v. Stewart,* 118 F.3d 628 (9th Cir.1997) (per curiam), *cert. granted,* —— U.S. ——, 118 S.Ct. 294, 139 L.Ed.2d 226 (1997), a case in which the habeas petitioner had absolutely no incentive to include a claim of incompetency to be executed in his first petition—in all events, that claim automatically would have been deemed premature—the Ninth Circuit stated that "a competency claim must be raised in the first petition." *Id.* at 634; *accord In re Davis,* 121 F.3d 952, 955 (5th Cir. 1997).

ger a new appeal period. On this basis, Pratt asserts that the second petition challenges a different judgment and is therefore not "second or successive." This argument is attractive at first blush, but blemishes emerge upon closer study.

In the first place, although Pratt grasped avidly for this apparent lifeline when it surfaced at oral argument in this court, the appearance marked its debut in the case. It is firmly settled in this circuit that arguments not advanced and developed in an appellant's brief are deemed waived. *See Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 87 (1st Cir.1990).

In the second place, this laglast argument is more a makeweight than a lifeline. The district court's method of restoring Pratt's right to an appeal—vacating the sentence and then reimposing it—is standard practice among federal courts. *See, e.g., United States v. Pearce*, 992 F.2d 1021, 1023 (9th Cir.1993); *Page v. United States*, 884 F.2d 300, 302 (7th Cir.1989). Although a reentered judgment of conviction, identical in all material respects to the judgment that it supplanted, technically may be "new," the vital question for present purposes is whether it is a type of new judgment that is subject to challenge in a second habeas petition without regard to earlier petitions addressed to the original judgment. We hold that it is not.

Under ordinary circumstances, a prisoner who successfully brings a habeas petition and is retried, reconvicted, and resentenced may collaterally attack the new judgment without fear of hindrance by the legal restrictions that encumber second or successive habeas petitions. *See Palmer v. Clarke*, 961 F.2d 771, 774–75 (8th Cir.1992); *Richmond*, 774 F.2d at 960. Nevertheless, this opportunity to petition freely for post-conviction relief after a new judgment of conviction is not unfettered. As a general rule, a prisoner who had both the incentive and the ability to raise a particular claim in his first petition for post-conviction relief, but declined to assert it, cannot raise it the second time around.

To illustrate, if the relief granted in response to an initial habeas petition addresses only the petitioner's sentence, he customarily cannot re-petition after resentencing based on alleged errors affecting the underlying conviction. *See Richmond*, 774 F.2d at 960. The rationale for such a holding is clear: the prisoner had ample incentive to challenge the underlying conviction in his first request for post-conviction relief since success on a claim of trial error would have wiped out the sentence and obviated the need to address any sentencing bevues; and, assuming that the prisoner had the ability to raise the trial-error claim in his first petition, there is no principled reason why the restrictions designed for second or successive petitions should not apply. *See id.*

This rationale applies squarely to Pratt. He had every incentive to assert his claim of trial error in his initial section 2255 petition. If the district court agreed that his lawyer's trial performance was constitutionally defective, then there would have been no need to appeal a faulty conviction. The objective that Congress had in mind when it placed curbs on a prisoner's freedom to file multiple habeas petitions would be frustrated if a prisoner could negate the legal effect of this kind of omission by the simple expedient of filing another petition. *See Galtieri v. United States*, 128 F.3d 33, 37–38 (2d Cir.1997).

There is a related reason why the reentered judgment does not transform the legal landscape. It is an abecedarian rule that, in a second petition for post-conviction relief, the prisoner must be able to point to a new claim of error—that is, a claim of error unavailable the first time around (because, say, it could not have been discovered in the exercise of reasonable diligence or it arose after the resolution of the initial petition). *See* 2 Liebman & Hertz, *supra*, § 26.3b, at 854–56; *id.* § 28.1, at 896. For example, if a habeas petition results in a retrial that yields a new conviction, the prisoner is free to seek further habeas relief based on errors that transpired in the course of the new trial. *See Palmer*, 961 F.2d at 774–75. Similarly, if a habeas petition results in a resentencing, the prisoner is free to petition for further relief based on errors

that transpired in the course of the resentencing. *See Richmond,* 774 F.2d at 960. In both cases, the prisoner is seeking redress for errors that he could not have challenged in a prior post-conviction proceeding unless he were clairvoyant. Unpursued errors arising out of events that occurred before the filing of the initial habeas petition, and which could have been, but were not, challenged in that petition, fall into a different category. Those errors normally are not eligible for inclusion in a subsequent habeas petition. *See Palmer,* 961 F.2d at 774–75.

Measured against the rule, as explicated by these examples, Pratt's asseveration falls short. His current section 2255 petition seeks to set aside the underlying conviction on a ground that he could have raised, but did not, when he filed his first petition. Pratt does not assert any claim of error that became available only after, or as a result of, the court's entry of a new judgment of conviction. Thus, his numerically second petition is in fact a second petition as AEDPA uses that term.

### D.

The end draws near. Pratt concedes in his appellate brief that he is unable to satisfy AEDPA's preconditions for filing a second section 2255 petition. In any event, this concession is compelled by the record: Pratt neither claims to possess newly discovered evidence in support of the petition nor invokes a neoteric rule of constitutional law. *See* 28 U.S.C. § 2255.

We need go no further. Pratt failed to marshal all his claims of error in his first section 2255 petition, and he must now pay the piper. AEDPA governs here, and, on the facts of this case, AEDPA's clear language prohibits Pratt from rectifying his omission by means of a second petition.

*The district court's dismissal of the habeas petition is affirmed. The petitioner's appeal is treated concurrently as a request for leave to file a second or successive habeas petition and, as such, it is denied.*