<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                               
                United States Court of Appeals
                    For the First Circuit

No. 98-1067

                       JEFFREY L. LIBBY,
                     Petitioner, Appellant,

                               v.

  MARTIN MAGNUSSON, COMMISSIONER, MAINE DEP'T OF CORRECTIONS,
                     Respondent, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

            [Hon. Gene Carter, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                               
                Coffin, Senior Circuit Judge,
                               
             and Pollak,* Senior District Judge.
                               
                               
                               
                               
    Schuyler G. Steele for appellant.
    Charles K. Leadbetter,   Assistant Attorney General, State of
Maine, with whom Andrew Ketterer, Attorney General, and Nancy
Torresen, Assistant Attorney General, were on brief, for appellee.

May 24, 1999

                               
                               

__________
*Of the Eastern District of Pennsylvania, sitting by designation.

 SELYA, Circuit Judge.  Over a decade ago, a Maine jury
found petitioner-appellant Jeffrey L. Libby guilty of murdering his
grandfather, and a state trial judge sentenced him to serve sixty
years in prison.  Since then, Libby has attempted on several
occasions to mount collateral attacks on his conviction.  The
latest in this series of attempts took place against the backdrop
of the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996)
(codified in scattered sections of 28 U.S.C.), and gave rise to the
instant appeal.  We retrace the pertinent portions of the case's
chronology.
 The petitioner filed his first federal habeas petition on
December 8, 1993.   See 28 U.S.C.  2254 (pre-AEDPA version).  The
district court dismissed it, and the petitioner did not appeal.  He
filed another pre-AEDPA section 2254 petition on October 11, 1995.
This petition addressed only Eighth Amendment issues anent the
conditions of his confinement.  It, too, was dismissed.  The
petitioner subsequently filed the underlying habeas corpus
application   his third petition under 28 U.S.C.  2254, but only
the second such petition that attacked his conviction   on October
27, 1997 (some 18 months after Congress enacted the AEDPA).  The
district court, acting upon the recommendation of a magistrate
judge, dismissed this petition on two grounds:  first, that it was
untimely under the AEDPA; and second, that it did not meet the
requirements for consideration of a second or successive habeas
petition.  This appeal followed.
                               I
 The AEDPA provides that "[b]efore a second or successive
application permitted by this section is filed in the district
court, the applicant shall move in the appropriate court of appeals
for an order authorizing the district court to consider the
application."  28 U.S.C.  2244(b)(3)(A).  Under this paradigm, a
second or successive habeas petition is not a matter of right   and
the gatekeeping function belongs to the court of appeals, not to
the district court.  See Felker v. Turpin, 518 U.S. 651, 661
(1996); Pratt v. United States, 129 F.3d 54, 57 (1st Cir. 1997),
cert. denied, 118 S. Ct. 1807 (1998).  Thus, if the AEDPA applied
to Libby's 1997 offering, he was required to ask this court for
prior authorization to proceed in the district court.  He did not
do so.  Instead, he took the position that the AEDPA did not apply
at all, and filed his 1997 petition directly in the district court.
 The district court accepted jurisdiction to review
Libby's petition on this basis, but determined that the AEDPA did
apply and that, under it, Libby's petition was time-barred.
Technically, the district court, after determining that the AEDPA
applied, might have dismissed the petition for want of an
authorizing order, or, alternatively, transferred the matter to
this court.  When the AEDPA is in play, the district court may not,
in the absence of proper authorization from the court of appeals,
consider a second or successive habeas application.  See Graham v.
Johnson, 168 F.3d 762, 772 (5th Cir. 1999); Lopez v. Douglas, 141
F.3d 974, 975-76 (10th Cir.) (per curiam), cert. denied, 119 S. Ct.
556 (1998); Hill v. Hopper, 112 F.3d 1088, 1089 (11th Cir.) (per
curiam), cert. denied, 520 U.S. 1203 (1997).  Here, however, no
useful purpose would be served by forcing the petitioner to retreat
to square one and wend his way anew through the jurisdictional
maze.  We have the power, in the exercise of our informed
discretion, to treat this appeal as if it were, in whole or in
part, a motion for authority to proceed under section
2244(b)(3)(A), see Lopez, 141 F.3d at 976; Pratt, 129 F.3d at 58,
and we will do so.
                               II
 We turn now to the threshold question of whether the
AEDPA applies to the underlying habeas application.  To support his
contention that it does not, the petitioner offers the by-now-
familiar argument that the AEDPA, as a general matter, has an
impermissible retroactive effect.  Just eight days after the
magistrate judge filed his report and recommendation in this case,
we directly confronted   and squarely rebuffed   this very
proposition in much the same context as here presented.  See Pratt,
129 F.3d at 58 (holding that the AEDPA applies to a second habeas
petition filed after the new law's effective date, even though the
petitioner had filed his first petition before that date).  Other
courts of appeals have joined us in so holding.  See Vancleave v.
Norris, 150 F.3d 926, 927 (8th Cir. 1998); In re Davenport, 147
F.3d 605, 608 (7th Cir. 1998).  Because the petitioner's arguments,
for the most part, are not qualitatively different from those that
we found wanting in Pratt, we reject them out of hand.  We add only
a decurtate comment, necessitated by the fact that here, unlike in
Pratt, the petitioner musters an ex post facto challenge.
 History teaches that the Ex Post Facto Clauses, U.S.
Const. art. 1,  9, cl. 3, and art. 1,  10, cl. 1, should be
construed narrowly.  See Collins v. Youngblood, 497 U.S. 37, 41-52
(1990).  Thus, an ex post facto law is one that punishes, as a
crime, an act which was innocent when committed; or which, after a
crime has been perpetrated, changes the punishment and renders it
more onerous; or which strips away a defense that was available at
the time when the defendant committed the crime.  See Lynce v.
Mathis, 519 U.S. 433, 440-41 (1997); California Dep't of
Corrections v. Morales, 514 U.S. 499, 504-06 & n.3 (1995); Beazell
v. Ohio, 269 U.S. 167, 169-70 (1925); Hamm v. Latessa, 72 F.3d 947,
956-57 (1st Cir. 1995).
 The AEDPA's standards governing the filing of second or
successive habeas petitions do not, retrospectively or otherwise,
criminalize past actions that were considered innocent when
performed by one in the petitioner's situation, render such an
individual's punishment more oppressive, or deprive him of any
previously available legal defense.  To the contrary, these
provisions simply limit the circumstances under which the
petitioner (or one similarly situated) may collaterally attack his
conviction.  It is, therefore, pellucid that application of the
AEDPA's requirements to the instant petition cannot work an ex post
facto violation.  Accord Hatch v. Oklahoma, 92 F.3d 1012, 1014
(10th Cir. 1996) (concluding that the AEDPA's provisions addressing
second or successive petitions do not infract the Ex Post Facto
Clause contained in art. 1,  9).
                              III
 Having determined that the AEDPA controls in this case,
we treat what remains of the appeal as a motion for leave to
proceed with the prosecution of a second or successive habeas
petition.  From that coign of vantage, we consider whether Libby
satisfies the strictures that the AEDPA imposes.
 The respondent, Maine's Commissioner of Corrections,
maintains that authorization to proceed should be refused because
the proposed petition is out of time.  As framed, this thesis
posits that the limitation period for filing a habeas petition
under the AEDPA is one year, see 28 U.S.C.  2244(d); that where,
as here, this period expired prior to AEDPA's effective date,
potential applicants have a one-year "grace period" within which to
file; that Libby, whose conviction became final sometime in 1988,
had only one year after April 24, 1996, within which to seek
authorization to proceed with a neoteric habeas petition; and that,
because he filed nothing until October 27, 1997, he should not be
allowed to go forward.  The lower court adopted this rationale and
dismissed the petition.
 We agree that section 2244(d) imposes a general one-year
limitation period for filing habeas petitions, and   although this
court has not yet spoken directly to the point   that federal
courts generally have recognized a one-year grace period following
the AEDPA's enactment in order to allay retroactivity concerns
associated with certain habeas applications arising out of
preexisting convictions.  See, e.g., Nichols v. Bowersox, ___ F.3d
___, ___ (8th Cir. 1999) (en banc) [1999 WL 203482, at * 4]; Wilcox
v. Florida Dep't of Corrections, 158 F.3d 1209, 1211 (11th Cir.
1998); see also Flanagan v. Johnson, 154 F.3d 196, 199-200 (5th
Cir. 1998) (collecting cases).  But this limitation period works
differently in respect to second or successive petitions, and the
respondent's thesis mis-identifies the correct triggering date for
such petitions.  That bevue, in turn, defeats the respondent's
contention that the instant petition was barred automatically one
year after the AEDPA became law.  We explain briefly.
 Section 2244(d) provides four different end points for
measuring the AEDPA's one-year limitation period.  The first is
"the date on which the judgment [in the underlying criminal case]
became final by the conclusion of direct review or the expiration
of the time for seeking such review."  28 U.S.C.  2244(d)(1)(A).
Because strict application of this one-year rule would have
extinguished the rights of many state prisoners to file even their
first habeas petitions, federal courts generally have construed the
statute, with respect to persons in state custody whose convictions
had become final more than one year before AEDPA's date of
enactment, to mean that the one-year limitation period runs from
that (enactment) date.  See Flanagan, 154 F.3d at 199-200
(collecting cases); Hoggro v. Boone, 150 F.3d 1223, 1225-26 (10th
Cir. 1998) (same).
 Although this grace period is a logical solution to the
retroactivity problem that would be raised by mechanical
application of a one-year limitation period to convictions that had
long before become final, indiscriminate application of the grace
period construct to second or successive petitions would contravene
both the letter and the spirit of the statute.  After all, the time
when a conviction becomes final is only one of four triggering
events that Congress described in section 2244(d)(1).  A second end
point   not at issue here   involves the date on which "the
impediment to filing an application created by State action in
violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State
action."  28 U.S.C.  2244(d)(1)(B).  The last two end points
comprise the date on which a new, retroactively applicable
constitutional right was initially recognized by the Supreme Court,
see 28 U.S.C.  2244(d)(1)(C), and "the date on which the factual
predicate of the claim or claims presented could have been
discovered through the exercise of reasonable diligence,"  id.  at
2244(d)(1)(D).  In our view, the respondent's single-minded
emphasis on the one-year grace period impermissibly overlooks the
import of these last two end points as a means of measuring the
applicable limitation period.
 The text and structure of section 2244 make manifest the
significance of these end points.  There are two ways in which a
habeas petitioner can prevail on a second or successive petition.
One is by showing that his claim "relies on a new rule of
constitutional law, made retroactive to cases on collateral review
by the Supreme Court."  See id. at  2244(b)(2)(A); see also
Rodriguez v. Superintendent, Bay State Correctional Ctr., 139 F.3d
270, 275-76 (1st Cir. 1998).  The other is by demonstrating that
the factual predicate of his newly asserted claim was not readily
discoverable at an earlier date and that, if proven, these new
facts will suffice "to establish by clear and convincing evidence"
that, but for the constitutional error, no reasonable factfinder
would have found the petitioner guilty of the charged crime.  See
28 U.S.C.  2244(b)(2)(B).  The precise textual correspondence
between the requirements for the substantive showing necessary to
sustain a second or successive petition and the AEDPA's temporal
end points sends a strong signal that the limitation period for a
second or successive petition almost always will be triggered by
the occurrence of one of the two events (the most prominent
exception being if the triggering event occurred prior to the
AEDPA's effective date).
 That this is the proper interpretation of the statute is
made evident by the anomalies that would result were we to adopt
the respondent's reading.  Take the example of a state prisoner
(whom we shall call "A") whose conviction was final in 1994 and who
had unsuccessfully sought habeas relief in 1995.  If, in 1998, the
Supreme Court recognized a new and retroactively applicable
constitutional right, A, under the respondent's construction, would
be barred from prosecuting a second habeas application even if he
acted on the very day that the Supreme Court announced its
decision.  This result would make a mockery of Congress's manifest
intent to provide relief in such circumstances   an intent evinced
not only by the explicit language of section 2244(b)(2)(A), but
also by the directive that the limitation period "shall run from
the latest of" the four triggering events limned in the statute.
See 28 U.S.C.  2244(d)(1).  In other words, the respondent's gloss
subtracts from what little Congress has given to state prisoners
who aspire to file second or successive habeas petitions and
thereby undercuts subsections 2244(d)(1)(C)-(D).  We ordinarily
read statutes in a manner that gives meaning to every word.  See
Walters v. Metropolitan Educ. Enterps., Inc., 117 S. Ct. 660, 664
(1997); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 (1st
Cir. 1985).  Because the respondent's reading of the AEDPA renders
entire subsections nugatory, it cannot be countenanced.
 Under the AEDPA, then, the rule is as follows.  A state
prisoner ordinarily must bring his first federal habeas petition
within one year of the date on which his conviction became final
(or, if the grace period applies, within that period).  But, this
time frame often will prove irrelevant for the purpose of measuring
the timeliness of a second or successive habeas petition.  Such a
petition will be deemed timely if filed within one year of the
occurrence of any of the triggering events described in section
2244(d)(1).  It follows, therefore, that if a one-year grace period
applies at all to a second or successive petition, it does so only
in cases in which the year extends, rather than truncates, the
limitation period.  See 28 U.S.C.  2244(d)(1).

                               IV
 Having fashioned a yardstick by which to measure the
appropriate triggering date for prescriptive purposes vis--vis
second or successive habeas petitions, we shift directions.  In
most settings, litigants invoke the statute of limitations as an
affirmative defense, see, e.g., Fed. R. Civ. P. 8(c), and this
principle functions much the same way in habeas corpus
jurisprudence.  Consequently, there is no need to consider the
viability of a limitations defense unless and until the habeas
petitioner has demonstrated that he has met the stringent criteria
outlined in section 2244(b)(2) for authorization to proceed with a
second or successive petition.  Libby's application, on its face,
fails to achieve those benchmarks.
 The AEDPA provides that courts of appeals "may authorize
the filing of a second or successive [habeas] application" if   but
only if   the application "makes a prima facie showing" that
satisfies the requirements of section 2244(b).  See 28 U.S.C.
2244(b)(3)(C).  These requirements effectuate a "modified res
judicata rule," Felker, 518 U.S. at 664, under which a habeas
petitioner, as a general matter, may neither resurrect claims
vetted in a previous application nor prosecute claims that
reasonably could have been raised in, but were omitted from, a
prior application.  The only two exceptions to this regime are
those to which we adverted earlier:  a repeat habeas applicant may
proceed on a previously unasserted claim that is based on either
(a) the announcement by the Supreme Court of a new, retroactively
applicable principle of constitutional law, see 28 U.S.C.
2244(b)(2)(A), or (b) some recently unearthed exculpatory evidence
that previously could not have been discovered through the exercise
of due diligence, see id. at  2244(b)(2)(B).  If an applicant
brings his petition within the narrow confines of one of these
exceptions, he is entitled to have a timely second or successive
petition considered by the district court; otherwise, he is not.
 Libby's petition wilts in the hot glare of this legal
regime.  He attempts to advance eight separate claims.  Four of
these are taken verbatim, or nearly so, from his initial habeas
application, filed on December 8, 1993, and dismissed on November
7, 1994.  These claims fall squarely within the prohibition of
section 2244(b)(1) (stating that "[a] claim presented in a second
or successive habeas corpus application . . . that was presented in
a prior application shall be dismissed"), and therefore need not be
discussed.
 Of the remaining four claims, three consist entirely of
allegations of trial error:  that the trial court improperly
admitted evidence of "habit or routine practice," that the jury
instructions were problematic, and that the evidence was inadequate
to sustain a conviction.  Although these assertions did not appear
in Libby's first habeas petition, they do not justify a second or
successive petition because they do not satisfy the requirements of
section 2244(b)(2).  As framed, the alleged errors have nothing to
do with freshly discovered evidence, and the petitioner does not
direct us to any new, retroactively applicable rule of
constitutional law that might cast any or all of these theories in
a materially different light.
 The last of the petitioner's claims is, on the surface,
a different breed of cat.  He contends that the state trial court
"ignor[ed] due process [and] refused to allow new evidence which
had not been discoverable prior to trial and which was highly
material as to key trial issues."  Closer perscrutation of the
accompanying factual allegations, however, shows that this claim,
too, is deficient.
 The "new evidence" that Libby cites is testimony by a
certain Edmund Winslow who, according to the petition, was ready to
"provide crucial alibi evidence" that would have placed Libby "in
a different location at the time of the homicide."  This witness,
the petition asserts, "only became known to [Libby] after trial and
by a lucky circumstance."  The petition further states that "the
[state trial] court refused a new trial based upon this witness's
crucial and previously undiscoverable testimony."  We learn from
the record that this last reference is to Libby's motion for new
trial, filed in the Kennebec County Superior Court on March 21,
1989 (in which he noted that he had a new alibi witness).
 The first question that the AEDPA directs us to ask when
a habeas petitioner makes a claim of newly discovered evidence on
a second or successive petition is whether the "factual predicate
for the claim could . . . have been discovered previously through
the exercise of due diligence" such that it could have been
included in the first habeas application.  28 U.S.C.
2244(b)(2)(B)(i).  Plainly, Libby knew that Winslow was a potential
alibi witness by March 1989   some four years before he submitted
his original application for federal habeas relief.  Since the
evidence already had been discovered, the claim should have been
brought the first time around.
 The petitioner strives to avoid this conclusion by
asseverating that the shortcomings in his initial application are
the product of the restrictive conditions of confinement which he
claims prevailed for many years.  Insofar as this argument is
tailored to justify the filing of his application after the one-
year grace period, it is irrelevant because it incorrectly
presupposes that he has made the requisite prima facie case for
proceeding with a second or successive habeas petition.  And even
if we treat the argument more broadly, it fails to furnish a basis
for relief.
 The eight alleged errors that the petitioner now seeks to
pursue were known to him (or, at least, knowable by him) before he
filed his first section 2254 petition.  Indeed, most of them are
apparent from the face of the trial record   and the one exception
is apparent from the face of the petitioner's 1989 motion.  As
previously mentioned, four of the eight alleged errors were
presented in Libby's initial habeas petition   and it is
surpassingly difficult to conceive of a reason why we should excuse
his failure to proffer the other four.  The presumption behind the
AEDPA appears to be that if a convict is able to file a habeas
corpus application, then he is able to include in it all claims
that are within his ken at the time of filing.  While this
presumption is rebuttable, the petitioner points to no statutory
provision that would permit him the leniency that he seeks in the
circumstances of this case.  Moreover, even were we to recognize an
exception, we certainly could not invoke it to benefit a state
prisoner who, like Libby, fails to identify any fact-specific
causal nexus between the peculiarities of his confinement and his
omitted claims.
                               V
 There is one further matter.  In Pratt, we held that the
AEDPA's requirements governing second or successive petitions do
not, as a general matter, violate non-retroactivity tenets when
applied to persons whose convictions were final before the AEDPA's
effective date.  See Pratt, 129 F.3d at 58.  We recognized,
however, that in a given case a habeas petitioner might be able to
show that these provisions have an impermissible retroactive impact
on one or more of his claims.  See id. at 58-60 (discussing
possibility of "mousetrapping").
 Libby tries to embrace this exception, but the
circumstances place it well beyond his grasp.  The sine qua non for
the exception is a showing that the petitioner detrimentally relied
on the legal status quo ante.  See id. at 59.  In this context, an
assertion of reliance must be objectively reasonable   and one easy
way to test the objective reasonableness of a particular assertion
is to determine whether the proponent would have prevailed on a
second or successive petition under the former regime.  See id.
Libby can make no such showing.
 But for the enactment of the AEDPA, Libby's case would be
governed by the abuse of the writ doctrine described in McCleskey
v. Zant, 499 U.S. 467 (1991).  See Pratt, 129 F.3d at 59.  That
doctrine compels a habeas petitioner to show both cause and
prejudice.  See McCleskey, 499 U.S. at 497; Pratt, 129 F.3d at 59-
60.  The petitioner cannot clear even the first of these hurdles.
Four of his claims were raised unsuccessfully in his 1993 habeas
petition, and he had no reasonable excuse for failing to raise then
and there the other four claims that he advanced in his 1997
petition; he has long been aware of the factual predicate
undergirding each such claim.  This concatenation of events,
without more, dooms the petitioner's quest.  See McCleskey, 499
U.S. at 497-502 (holding that a habeas petitioner cannot satisfy
the "cause" requirement where the evidence upon which he relies
would have been available through the exercise of reasonably
diligent fact gathering).
 The only remaining possibility for relief is if the newly
presented claims persuasively suggest a fundamental miscarriage of
justice.  See id. at 502.  This exception is rarely found
applicable, and neither the factual allegations in Libby's petition
nor the arguments in his brief give any indication that we are
confronted with such an extraordinary situation.
 We need go no further.  There is no basis under the AEDPA
for allowing Libby to file a further habeas petition.

 We affirm the district court's dismissal of the
petitioner's application for habeas corpus relief.  Additionally,
we treat this appeal, in part, as a motion for permission to file
a second or successive habeas petition.  So viewed, we deny the
motion.

</body>

</html>