

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-2009

# USA v. Muhammad

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4592

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Muhammad" (2009). *2009 Decisions*. Paper 1135.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4592
_____

UNITED STATES OF AMERICA,

v.

BUWLUS A. MUHAMMAD,

Appellant.

_____

On Appeal from the United States District Court
for the
Western District of Pennsylvania
(D.C. Criminal No. 05-cr-00035)
District Judge: Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 19, 2009

Before: FUENTES, JORDAN, and NYGAARD Circuit Judges.

(Opinion Filed: June 25, 2009)

OPINION OF THE COURT

FUENTES, Circuit Judge:

Buwlus Muhammad appeals his conviction and sentence for mailing threatening communications—letters containing a solid, white powder believed to be anthrax or another harmful substance—to several public officials that resulted in a significant disruption of government operations. While Muhammad raises a large number of issues on appeal, we believe only three require extended comment: (1) whether the District Court abused its discretion in denying Muhammad's motion for a mistrial in response to the conduct of one juror; (2) whether Muhammad's indictment and conviction violate the Ex Post Facto Clause or Due Process Clause of the Constitution; and (3) whether the prosecuting attorney engaged in misconduct before the grand jury.[1] For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

Because we write exclusively for the parties, we only discuss the facts to the extent necessary for resolution of the case. On March 2, 2004, Muhammad appeared in traffic court in Erie, Pennsylvania where he was found guilty of driving without a license. The

---

[1] Muhammad also argues that (1) there was insufficient evidence to establish that he knowingly deposited the threatening communication, (2) there was insufficient evidence to prove that a threat was made, (3) the prosecuting attorney engaged in misconduct in his closing argument, (4) the judge engaged in misconduct that prejudiced Defendant, (5) the District Court abused its discretion when it permitted expert testimony, (6) the District Court abused its discretion when it permitted the government to play a video for the jury, (7) the District Court erred in denying Muhammad's motion to suppress certain evidence, and (8) the term of imprisonment of 175 months was excessive.

following day, he was scheduled to appear in state court on eleven separate charges involving driving with a suspended license. Muhammad's appearance was cancelled, however, because the courthouse closed after five envelopes containing a solid, white powder arrived in the mail. The letters were addressed to three Common Pleas Court Judges and the Erie County District Attorney's Office. Additionally, Erie's City Hall closed after an envelope was delivered to the mayor on the same day. At the time, the substance was believed to be anthrax or some harmful substance. Chemical analysis later revealed that the substance was only baking power.

Muhammad was quickly identified as a possible suspect, having previously had some form of contact with the recipients of the five envelopes. Muhammad was charged with five counts of sending threatening communications in violation of 18 U.S.C. § 876. He was convicted after a jury trial and sentenced to a 175 month term of imprisonment.

On the final day of Muhammad's trial, Juror No. 108 informed the court of a comment made to her by Juror No. 86 during lunch the previous day. According to the record, Juror No. 86 reportedly suggested that she planned to avoid an upcoming community street festival because "every black person in town" would be in attendance. (Supp. App. at 859.) The record further discloses that when a group of African American teenagers walked past the two jurors on the street, Juror No. 86 reportedly commented that "the world was in a very sad shape and she couldn't bear to look at them." (Supp. App. at 860.)

3

Juror No. 108 was concerned that the comments were symptomatic of an underlying racial bias on the part of Juror No. 86. Before informing the court, however, she discussed her concerns with four or five other jurors. (Supp. App. at 861.) In response, Juror No. 105 suggested that Juror No. 108 say nothing about the comment, while another juror suggested that Juror No. 108 should inform the Court. After speaking with the judge's clerk about the matter, Juror No. 108 met with the judge in chambers and explained what had transpired.

Thereafter, the Court summoned Muhammad, who was pro se, and the prosecutor, to chambers, where the court reporter read back the conversation between Juror No. 108 and the Court. In consultation with the parties, the District Court decided to remove Juror No. 86 and replace her with an alternate. Muhammad moved for a mistrial, which the District Court denied. Muhammad then requested that the Court also replace Juror No. 105, who had advised Juror No. 108 to remain quiet. The District Court and the prosecutor agreed, and Juror No. 105 was replaced.

## II.

We first address Muhammad's contention that he suffered substantial prejudice from the retention of the other jurors and the continuation of trial.[2] Whether a defendant suffers substantial prejudice is determined by considering the "probable effect" that the

---

[2] We review the District Court's decision to deny the motion for mistrial for abuse of discretion. *Gov't of V.I. v. Fahie*, 419 F.3d 249, 258 (3d Cir. 2005).

offensive comment would be likely to have on a hypothetical average juror. *United States v. Gilsenan*, 949 F.2d 90, 95 (3d. Cir. 1991).

In our view, the District Court took appropriate steps to remove the juror who expressed racial bias, as well as the juror who may have been overly tolerant of that bias. Muhammad's motion for a mistrial appears to be based on the notion that it was unknown how many other jurors potentially agreed with Juror No. 86, and therefore the other jurors may have been tainted by Juror No. 86's comments. (Supp. App. at 866.) After carefully considering Muhammad's repeated objections, the District Court nevertheless denied the motion.

First, the District Court reasoned that it could not be certain why Juror No. 105 advised Juror No. 108 not to inform the Court; he may have been motivated by prejudice or he may have thought that informing the Court would have resulted in the trial beginning anew. (Supp. App. at 867.) Second, the Court noted that the purpose of conducting the initial voir dire was to guard against this type of bias. The judge commented as follows: "I just don't feel that this woman would be enough to sway other people or taint other people to her way of thinking. It doesn't make sense to me that would happen." (Supp. App. 866-67.) He later continued, "I can't believe that because I say to somebody else I don't like black people, that is going to make that person not like a black person." (Supp. App. at 869.)

Consistent with the reasoning of the District Court, and the record before us, we cannot say it was an abuse of discretion to believe that Juror No. 86's comments were

5

unlikely to taint the remaining jurors. In addition, we note that Muhammad never asked the District Court to voir dire the rest of the jurors concerning any juror misconduct. (Supp. App. at 869.) Given the actions taken by the District Court to remove both the juror who expressed bias against African Americans as well as the juror who failed to recognize the importance of that bias in the context of a criminal proceeding, we are satisfied that the District Court did not abuse its discretion in denying Muhammad's motion for a mistrial.

## III.

Next, Muhammad raises the issue of whether the indictment and conviction violate the Ex Post Facto Clause or any due process right to notice of the proscribed activity. He argues that because the commission of the crime took place on March 3, 2004, prior to the this Court's decision in *United States v. Zavrel*, 384 F.3d 130 (3d Cir. Sept. 21, 2004), his case should not have been evaluated according to *Zavrel's* interpretation of 18 U.S.C. § 876.[3] Muhammad argues that by applying the analysis of *Zavrel*, the District Court committed an act of "judicial ex post facto" and denied him fair warning in violation of

---

[3] Section 876 provides

Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 876(c) (2000).

6

the Due Process Clause of the Constitution.[4]

Indeed the Supreme Court has recognized that "a deprivation of the right of fair warning can result from . . . an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S.347, 352 (1964). However, the right of fair warning does not rest on the Ex Post Facto Clause as Muhammad contends; rather, it is part of the core concept of due process. *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (noting that *Bouie* was "firmly rooted in well established notion of *due process*," such as "notice, foreseeability, and, in particular, the right to fair warning . . . ."). Moreover, the prohibition against retroactive application of judicial interpretations of criminal statutes is restricted to those statutes that are "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* at 457. In this light, Muhammad's claim that the District Court committed an act of "judicial ex post facto," in applying *Zavrel* is unfounded.

In *Zavrel*, we held that the defendant's mailing of cornstarch, which was meant to resemble anthrax but did not contain a written message, nevertheless constituted a "communication" within the meaning of § 876. 384 F.3d at 134. We held that under § 876, a communication "need not be in writing." *Id.* at 135. We further held that a communication of this nature affirmatively constituted a "threat to injure" under § 876.

---

[4] The sufficiency of an indictment and conviction presents a question of law over which we exercise plenary review. *Gov't of the V.I. v. Moolenaar*, 133 F.3d 246, 247 (3d. Cir. 1998).

*Id.* at 136 ("A reasonable person opening an envelope containing a white powdery substance, during the height of the anthrax crisis in this country, would doubtless fear immediate and future injury.") Our decision in *Zavrel*, based on our reading of § 876, created no surprise or revelation.

And, because the District Court's application of the reasoning in *Zavrel* was neither unexpected nor indefensible in light of expressed prior law, there was no due process violation even though the act contemplated by § 876 occurred before *Zavrel* was decided. In *Zavrel*, we found support for our interpretation of § 876 in two decisions, both decided before the acts committed by Muhammad. *See, e.g.*, *Pratt v. United States*, 129 F.3d 54, 56 (1st Cir. 1997) (upholding a conviction under § 876 for mailing a mutilated pig to a local police chief after the officer had confiscated several of the defendant's firearms); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("An absence of explicitly threatening language does not preclude the finding of a threat . . . ."). Accordingly, we conclude that the District Court properly denied Muhammad's motion to dismiss the indictment based on his claim of "judicial ex post facto."

IV.

Lastly, Muhammad contends that the indictment should have been dismissed because the prosecuting attorney engaged in misconduct before the grand jury. He argues that while presenting the case to the grand jury, the prosecuting attorney violated Muhammad's due process rights by describing the material contained in the envelopes as a "white powder." Muhammad suggests that if the prosecutor had described the

8

substance differently in the indictment, such as "multi-colored green and white granular rock salt," "solid particles," "granular substance," or simply "solid powder,"[5] the government would not have been able to prove an essential element of § 876: the "threat[] to injure."[6]

We begin by noting that the dismissal of an indictment is a "drastic remedy." *United States v. Morrison*, 449 U.S. 361, 365 n.2 (1981). A district court, in the exercise of its supervisory authority, "may not dismiss an indictment for errors in the grand jury proceedings unless the errors prejudiced the defendant." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Rather, a court must consider whether a violation influenced the grand jury's decision to indict or constituted ordinary, harmless error. *Id.* at 256.

We reject Muhammad's argument that he was prejudiced by the government's description of the substance as a "powder" during the grand jury proceedings. Muhammad has not identified, and we are not otherwise aware of, any case law or statutory authority to support the proposition that it is inappropriate or inaccurate to describe a white substance seized by police as a "white power" during grand jury proceedings. Moreover, even if we were to conclude that there was prosecutorial

---

[5] It is unclear which description Muhammad is arguing should have been used. He apparently objects, however, to the characterization of the material as a "powder."

[6] We exercise plenary review of the District Court's decision to deny Muhammad's motion to dismiss the indictment and review the Court's factual findings for clear error. *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998).

misconduct before the indicting grand jury, the guilty verdict delivered by the petit jury cured any defect in the grand jury proceeding and rendered any misconduct harmless. *United States v. Console*, 13 F.3d 641, 672 (3d. Cir. 1993) (noting that "[a]ny prosecutorial misconduct before the grand jury 'had the theoretical potential to affect the grand jury's determination whether to indict . . . [b]ut the petit jury's subsequent guilty verdict means not only that there was probable cause . . . but also that they are in fact guilty as charged beyond a reasonable doubt.'") (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)).

V.

We have thoroughly and carefully considered each of the other arguments Muhammad raises on appeal, and we find that they are without merit and thus do not warrant discussion.

For the foregoing reasons, we will affirm the District Court in all respects.