**Anthony MATOS, Petitioner**

v.

**UNITED STATES of America, Respondent.**

**Nos. 04–cr–30046–MAP, 12–cv–30009–MAP.**

United States District Court, D. Massachusetts.

June 10, 2013.

Myles Jacobson, Law Office of Myles Jacobson, Northampton, MA, Vincent A. Bongiorni, Springfield, MA, for Petitioner.

Karen L. Goodwin, Todd E. Newhouse, United States Attorney's Office, Springfield, MA, Christopher R. Donato, United States Attorney's Office, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER REGARDING PETITIONER'S MOTION TO VACATE UNDER 28 U.S.C. § 2255*

**(Dkt. No. 477)**

PONSOR, District Judge.

## I. *INTRODUCTION*

Petitioner Anthony Matos has filed a habeas petition under 28 U.S.C. § 2255 challenging the performance of his trial and appellate attorneys. While these are claims that are normally appropriate for collateral review, Petitioner previously filed a § 2255 petition to reinstate his direct appeal after his trial attorney failed to file the notice of appeal as he requested. This petition is therefore technically a second petition requiring preclearance by the Court of Appeals under the First Circuit's Antiterrorism and Effective Death Penalty Act ("AEDPA") jurisprudence. While Petitioner provides strong reasons for the court to review his ineffective assistance of trial counsel claims, this court lacks jurisdiction over these claims because they were not presented as claims for relief in his first petition. Petitioner's claims of ineffective *appellate* counsel could theoretically fit an exception to the preclearance requirement, but the record is clear that, as a matter of law, Mr. Matos was not prejudiced by any failures of his appellate counsel. For these reasons, as elaborated below, the court will deny Petitioner's motion to vacate under 28 U.S.C. § 2255.

## II. *FACTS*

On May 4, 2006, Petitioner Anthony Matos pled guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 1957. Petitioner was one of a number of defendants indicted for and found guilty of an illegal land flip scheme that operated from approximately 1995 to May 2002.

The scheme worked as follows. Several individuals, including Petitioner, purchased distressed properties in low-income neighborhoods in and around the Springfield, Massachusetts area. The properties were then sold at much higher prices, often within days, to unsophisticated, low-income, first-time home buyers without the financial means to qualify for loans. Petitioner's co-conspirators included mortgage brokers, real estate appraisers, and a real estate attorney. The conspirators facilitated the sales by conducting fraudulent appraisals that over-valued the properties and creating fraudulent documents that

allowed the otherwise unqualified purchasers to qualify for the loans. The conspirators divided the proceeds from the sales—obtained from loans from various lending institutions—among the individuals involved with a particular piece of property. The purchasers of the properties virtually always defaulted on their loans. The court found that Petitioner was responsible for around $1.6 million in losses due to his fraudulent activity as a participant in the scheme. (Dkt. No. 408, Sentencing Tr. 34:24.)

The Presentence Report ("PSR") and the plea agreement stated that Petitioner was subject to a statutory maximum term of imprisonment of thirty years on each of the wire fraud counts and ten years on the money laundering court. During the plea colloquy, this court asked Petitioner if he understood the maximum penalties. At the court's request, the government stated that the maximum term of imprisonment for the wire fraud counts was thirty years. The court then informed Petitioner of the possibility of stacking the thirty-year maximum sentences on top of each other to impose a 90–year sentence.

At his sentencing on October 16, 2006, the court sentenced Petitioner to 84 months of concurrent imprisonment on each count and four years of supervised release. Petitioner was also ordered to pay restitution.

Originally, no notice of appeal was filed with the First Circuit. On December 14, 2007, Petitioner filed his first motion to vacate under 28 U.S.C. § 2255. As relief, Petitioner only requested "an ORDER requiring re-instatement of Petitioner's NOTICE OF APPEAL." (Dkt. No. 407, Pet'r's 2007 Mem. Mot. Vacate 1.) Petitioner signed an affidavit stating that he had requested that his attorney file a Notice of Appeal. Petitioner also submitted a supplemental briefing entitled, "Petitioner's Claims to be Presented on Direct Appeal." (Dkt. No. 414.) The supplemental claims to be raised on appeal included an attack on the validity of his plea:

> Matos's plea agreement was not intelligently entered because Matos's Attorney Vincent Bongiorni, Assistant United States Attorney William Welch and the Honorable Michael A. Ponsor all misinformed Matos of the maximum penalty authorized for a violation of 18 U.S.C. § 1343 wire fraud offense which did not affect a financial institution and which had occurred prior to July 2, 2002.

(Dkt. No. 414 at 1.)

The supplemental filing did not directly ask for additional relief but Petitioner did note that:

> the claims alleged herein have merit and are highly likely to be reversed and remanded on appeal if not vacated in this § 2255 proceeding under ineffective representation on the part of attorney Bongiorni. Matos contends that the noted claims require that his sentence and convictions be vacated and the proceedings began [sic] anew.

(Dkt. No. 414 at 4.)

On February 2, 2009, 2009 WL 259686, this court allowed Petitioner's motion and instructed the clerk to file a Notice of Appeal on Petitioner's behalf within ten days of the issuance of the memorandum and order. (Dkt. No. 434.) The court made no findings and granted no relief regarding the ineffective assistance of counsel claims, since Petitioner labeled them as claims he intended to raise on direct appeal.

On July 7, 2010, the First Circuit entered judgment vacating Petitioner's sentence and remanding the case for resentencing. The court's remand order mandated that the period of supervised release be reduced from four years to

three, but in all other respects it affirmed Matos's sentence and conviction. *United States v. Matos*, 611 F.3d 31 (1st Cir.2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 959, 178 L.Ed.2d 790 (2011). In its memorandum, the First Circuit held that this court incorrectly imposed an 84–month sentence on the wire fraud counts, which had a five-year statutory maximum because they did not affect a financial institution, but found the error harmless, because the sentences were concurrent with an identical 84–month sentence on the money laundering count, which had a ten-year statutory maximum. *Matos*, 611 F.3d at 35–36.

The First Circuit refused to consider Petitioner's argument that his money laundering conviction was improper in light of *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), because Petitioner did not raise that argument until his reply brief. *Matos*, 611 F.3d at 37–38. The First Circuit reviewed the district court's calculation of Petitioner's criminal history points and order of restitution for plain error and found that the court did not commit plain error.

Petitioner filed the current petition on January 11, 2012, arguing that he received ineffective assistance of counsel for four reasons: (1) trial counsel's failure to point out that the statutory maximum for wire fraud was five years rather than thirty years; (2) appellate counsel's failure to object to his money laundering sentence under *Santos;* (3) trial counsel's failure to make specific objections to this court's calculation of the criminal history category; and, (4) trial counsel's failure to object to the district court's order of restitution. Petitioner requested that the court re-sentence him to no more than five years imprisonment, which he had already served, and vacate the order of restitution. In the alternative, Petitioner requested to withdraw his guilty plea because it was not entered intelligently.

## III. *DISCUSSION*

Petitioner Matos presents multiple claims for § 2255 relief in his motion to vacate. The ineffective assistance of trial counsel claims are procedurally barred because Petitioner did not have the petition—his second under § 2255—pre-cleared. The ineffective assistance of appellate counsel claim is properly presented in the petition, but it is without merit because Petitioner was not prejudiced by his appellate counsel's failure to raise *Santos*. As will be explained in more detail below, even assuming Petitioner is correct in his interpretation of *Santos*, there is no "merger" problem because the nature of the particular fraudulent scheme that Petitioner participated in ensured that virtually all of the scheme's cash flow constituted "profits" and not merely receipts.

To reach the merits of these claims, Petitioner first must show that he met the procedural requirements for a motion to vacate under § 2255. A petitioner may only file "[a] second or successive motion" if it has been certified by a panel of the court of appeals to contain new evidence or a new rule of constitutional law. 28 U.S.C. § 2255(h).

█ Petitioner filed a motion under § 2255 on December 12, 2007, seeking to have the court enter an order to allow him to file a Notice of Appeal when his attorney had failed to file the notice pursuant to Petitioner's instructions. (Dkt. No. 407, Mem. Law Pet.'r's Mot. Vacate 1, 3.) Petitioner then filed this petition under § 2255 on January 11, 2012, arguing ineffective assistance of trial and appellate counsel.

█ It cannot be denied that this is the second time that Petitioner has asked this court for relief under § 2255. While the Supreme Court has made clear that not every second petition for habeas relief should be counted as a successive petition for AEDPA purposes, *see Stewart v. Martinez–Villareal,* 523 U.S. 637, 646, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), the First Circuit has made it clear that *all* collateral claims must be raised in a petitioner's first § 2255 motion, even if the first motion only seeks to have a notice of appeal reinstated. *Pratt v. United States,* 129 F.3d 54, 61 (1st Cir.1997), *cert. denied,* 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998).[1]

Just as in *Pratt,* Petitioner's attorney failed to perfect a timely appeal of the conviction despite requests from Petitioner. In both cases, the trial court re-instated the Notice of Appeal based on the first § 2255 petition. In *Pratt,* the First Circuit dismissed the second petition for failure to comport with AEDPA's pre-clearance prerequisite for second and successive petitions. The court noted, "[t]he requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for a unitary presentation to the district court. This exercise advances the cause of judicial efficiency and further justifies barring Pratt's second petition." *Pratt,* 129 F.3d at 61.

The Supreme Court and First Circuit have noted limited exceptions to this rule: (1) if the initial petition was dismissed for failure to exhaust state remedies, *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); (2) if the original petition did not produce an adjudication on the merits, *Pratt,* 129 F.3d at 60; (3) where the later petition raised the same grounds as a previous petition that had been dismissed as premature, *Stewart v. Martinez–Villareal,* 523 U.S. 637, 643, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); and (4) if the second petition pointed to a claim of error unavailable the first time around, *Pratt,* 129 F.3d at 62.

A. *Ineffective Assistance of Trial Counsel.*

█ Three of Petitioner's claims for relief offer ineffective assistance of trial counsel claims: failure to raise issues relating to the proper maximum sentence and the impact of that failure on the plea hearing, failure to object to the sentencing court's order of restitution, and failure to make specific objections to the sentencing court's calculation of criminal history points. These claims for relief could have been raised in Petitioner's first § 2255 petition. While Petitioner did mention several of these issues in his first § 2255 petition, they were merely part of a supplemental filing that included a longer list of arguments to be raised on appeal. These arguments were not treated as sep-

---

1. As Petitioner notes, eight circuits have held that the tally of applications resets to zero after the Petitioner concludes a direct appeal that was ordered in response to an earlier § 2255 petition which only requested a notice of appeal be reinstated. *Urinyi v. U.S.,* 607 F.3d 318, 321 (2d Cir.2010) (per curiam); *In re Olabode,* 325 F.3d 166, 173 (3d Cir.2003); *In re Goddard,* 170 F.3d 435, 438 (4th Cir. 1999); *Storey v. Vasbinder,* 657 F.3d 372, 378 (6th Cir.2011); *Shepeck v. U.S.,* 150 F.3d 800, 801 (7th Cir.1998) (per curiam); *Johnson v.* U.S., 362 F.3d 636, 638 (9th Cir.2004); *U.S. v. Scott,* 124 F.3d 1328, 1330 (10th Cir.1997) (per curiam); *McIver v. United States,* 307 F.3d 1327, 1332 (11th Cir.2002). Only the Fifth Circuit has adopted the same rule as the First Circuit. *U.S. v. Orozco–Ramirez,* 211 F.3d 862, 869 (5th Cir.2000). However, the First Circuit precedent is binding on this court, and the First Circuit has expressed no reservations about the continuing validity of *Pratt. Jamison v. United States,* 244 F.3d 44, 47 (2001).

arate grounds for relief under § 2255. Instead, the "sole issue" raised in the first § 2255 petition was "whether Petitioner's attorney failed to file a notice of appeal." (Dkt. No. 434, Mem. & Order Pet. Vacate 1, Feb. 2, 2009.) The court did not dismiss any claims as premature nor did the court retain jurisdiction over any collateral claims.

This court provided a final ruling on the merits of the initial petition on February 2, 2009, and reinstated Petitioner's Notice of Appeal. (*Id.*) All of Petitioner's ineffective assistance of trial counsel claims are therefore procedurally barred unless Petitioner receives preclearance from the First Circuit.

While it is clear that the *Pratt* rule requires the dismissal of Petitioner's ineffective assistance of trial counsel claims, it is impossible to avoid recognizing that Petitioner's situation here raises many of the problems that other circuits have found persuasive in deciding that, when a first § 2255 is granted to reinstate a direct appeal, the counter of collateral attacks pursued should be reset to zero. The Fourth Circuit has most cogently laid out the problems of requiring prisoners to present all of their collateral challenges (but not their appellate claims) in their first petition when they seek to have a notice of appeal reinstated. The difficulty with this approach:

> is that a prisoner moving to get his appeal right reinstated is proceeding without counsel. We cannot expect him to analyze his claims and make judgment calls about which ones are truly collateral and which ones are better reserved for direct appeal. Placing this burden on a prisoner who has lost his appeal rights would put him in a position inferior to that of a defendant whose lawyer filed a timely notice of appeal. In the second instance, the defendant

receives the assistance of counsel in identifying issues appropriate for direct review before any issue has been raised unnecessarily (and ill-advisedly) in a collateral motion.

*Goddard,* 170 F.3d at 437 n. 1; *see also McIver,* 307 F.3d at 1332 n. 2 (11th Cir. 2002).

Even the First Circuit has recognized that the current system could result in district courts giving "natural priority . . . to the reinstatement claim" and giving "short shrift to, or otherwise prejudice treatment of, the remaining claims." *Jamison,* 244 F.3d at 47. The First Circuit noted that "[j]ust how real the threat may be is a matter of reasonable dispute." *Id.* This case may provide an opportunity for the First Circuit to re-think its holding in *Pratt* in light of the logic of *Goddard* and the other contrary cases, or to suggest ways in which a trial court may protect against the potential for unfairness that the preclearance rule inevitably generates in this situation.

B. *Ineffective Assistance of Appellate Counsel.*

█ Petitioner's ineffective assistance of appellate counsel claim may fit into one of the exceptions to preclearance. Obviously, an ineffective assistance of appellate counsel claim could not have been raised until Petitioner actually proceeded with his appeal. This scenario seems to fit into the fourth exception listed in *Pratt:* a second petition that raises a claim of error unavailable at the time of the first petition. 129 F.3d at 62.

The First Circuit has not explicitly recognized this particular application of the exception. However, a failure to raise ineffective assistance of appellate counsel is similar to other errors in further proceedings that the First Circuit has recognized. "[T]he prisoner is seeking redress for er-

rors that he could not have challenged in a prior post-conviction proceeding unless he was clairvoyant." *Pratt*, 129 F.3d at 63. The challenged errors of appellate counsel are not "unpursued errors arising out of events that occurred before the filing of the initial habeas petition" but, instead, new errors that have arisen out of proceedings that occurred after Petitioner's initial petition was filed. *Id.*

Petitioner argues that his appellate attorney was ineffective because he failed to argue that the higher statutory maximum for money laundering should have "merged" with the wire fraud convictions under the Supreme Court's decision in *Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

To demonstrate ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance must "[fall] below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. Petitioner must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Singleton v. United States*, 26 F.3d 233, 238 (1st Cir.1994).

Petitioner argues that his appellate counsel failed to raise a promising argument—which could have reduced his sentence from 84 months to 60—until the reply brief. Six months before this court ordered that a Notice of Appeal be filed

and over a year before Mr. Matos's brief was filed with the First Circuit, the Supreme Court issued an opinion in *Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). The decision had no majority opinion. The plurality opinion was written by Justice Scalia, and Justice Stevens's concurrence was the narrowest opinion. The Court held that "proceeds" in the money laundering statute[2] referred to profits and not receipts, in the case of an illegal gambling operation. Justice Stevens noted if promotion in the money laundering statute included the

> mere payment of the expense of operating an illegal gambling business as a separate offense [it] is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more than those for the underlying offense of operating a gambling business.

*Santos*, 553 U.S. at 527, 128 S.Ct. 2020 (Stevens, J., concurring).

Justice Stevens limited his interpretation of the term "proceeds" to the context of a gambling business paying essential expenses. *Santos*, 553 U.S. at 528, 128 S.Ct. 2020.

Justice Stevens's concurrence refused to broaden the application of this interpretation of proceeds to other predicate crimes and even noted two crimes where he would not interpret "proceeds" to mean profits—the sale of contraband and the operation of organized crime syndicates. The plurality opinion provided a much broader basis for the ruling. Justice Scalia writing for the

**2.** "Whoever, knowing that the property involved in a financial transaction *represents the proceeds of some form of unlawful activity*, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—*with the intent to promote the carrying on of speci-* *fied unlawful activity* . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." 18 U.S.C. § 1956 (emphasis added).

plurality noted that "[t]he merger problem is not limited to lottery operators. ... Anyone who pays for the costs of a crime with proceeds ... would violate the money-laundering statute." *Santos,* 553 U.S. at 516, 128 S.Ct. 2020.

Petitioner contends that the government never adequately demonstrated that the money laundering he pled guilty to in this case was done with profits. As a result, he argues, the government improperly took a transaction that had already been punished through the wire fraud statute and "radically increase[d] the sentence for that crime" through the money-laundering charge. *Santos,* 553 U.S. at 517, 128 S.Ct. 2020. As Petitioner argues, the *Santos* decision should have provided a fruitful ground to challenge his conviction on appeal, because the wire fraud and money laundering counts were based on "the same factual allegations." (Dkt. No. 483, Mem. Law Pet.'r's Mot. 8.) Petitioner contends that the failure of his appellate counsel to make this argument before the reply brief constituted ineffective assistance of appellate counsel.

■ Despite Petitioner's extended briefing on the proper interpretation of the *Santos* decision, it is apparent that his appellate counsel's decision not to raise the argument to the First Circuit was neither a deficient performance nor prejudicial. To demonstrate a deficient performance, Petitioner must show that an attack on his sentence based on *Santos* "was so obvious and promising that no competent lawyer could have failed to pursue it." *Arroyo v. U.S.,* 195 F.3d 54, 55 (1st Cir.1999).

While some courts have recognized that a failure to address the impact of recently decided Supreme Court cases can constitute a deficient performance, those cases involved "a sea change" in the law such as *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Rich-*ardson v. United States, 477 F.Supp.2d 392, 398 (D.Mass.2007); *see also Ballard v. United States,* 400 F.3d 404, 407 (6th Cir. 2005) (noting that appellate lawyers should be aware of important and relevant changes in the law such as *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Supreme Court's decision in *Santos* did not represent a sea change moment in the same way that both *Booker* and *Apprendi* did.

Moreover, the holding in *Santos* is far from straight-forward. As Petitioner's current counsel admits "the *Santos* merger holding has proved difficult [to] understand." (Dkt. No. 493, Suppl. Mem. Supp. Pet. 7.) In its decision to vacate Petitioner's sentence, the First Circuit declined to respond to the *Santos* argument because it was brought up in the reply brief. But it also noted that "it is hardly certain that the *Santos* holding would have any application here." *Matos,* 611 F.3d at 38. It was not deficient for appellate counsel to focus on more successful arguments and leave out a complicated argument that may not be applicable to the wire fraud context.

■ Finally, even if the court believed that appellate counsel's performance was deficient in failing to raise the *Santos* issue, Petitioner still could not make out an ineffective assistance of appellate counsel claim. Petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Here, no viable claim of prejudice exists, because Petitioner clearly would not have prevailed on the merits of any *Santos* claim.

Petitioner argues that if the merger doctrine applies, the government would need to show that the money laundering indictment was based on the disposition of

proceeds: "receipts from the charged unlawful act [that] exceeded the costs fairly attributable to it." *Santos,* 553 U.S. at 520, 128 S.Ct. 2020 (Scalia, J., plurality opinion). The plurality noted that "the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in the charged transaction." *Santos,* 553 U.S. at 520, 128 S.Ct. 2020.

Here there is no problem with merger because the cash flow generated by the illegal scheme that Petitioner participated in was virtually all profits. The indictment specifically noted that the object of the conspiracy included "distributing the net profits of the wire fraud scheme." (Dkt. No. 104–2, Superseding Indictment ¶ 26.) And during the plea colloquy, Defendant admitted that he did, in fact, conspire to launder money "to distribute profits of the wire fraud scheme." (Dkt. No. 444, Change of Plea Tr. 25:4–12.)

The very nature of the fraud was such that a huge percentage of the cash flow coming in was profits, not merely receipts being paid out to cover the costs of the operation. The land flip scheme required little or no investment of cash.[3] The only regular expense was a modest fee (typically $2,000) to the people who located the purchasers. The rest was profit, and the profits were often large. The properties were purchased for a fraction of what they were sold for, and the "flip" (re-sale at the much higher price) occurred within days of the original purchase. In short, this fraudulent scheme created virtually pure profits for the conspirators.

The conspiracy to launder money count, to which Petitioner pled guilty, provided an example of one such transaction in which Petitioner was directly involved. The government alleged that on August 19, 1999, Defendants Bergdoll, Matos, Jarrett, Smith, Frederick, and Innarelli "fraudulently caused Equicredit Corporation to wire approximately $73,970 into Innarelli's IOLTA account for the sale of 38–40 Clarendon Street, Springfield, MA." (Dkt. No. 104–2, Superseding Indictment ¶ 27, at 24.) The property at 38–40 Clarendon Street was sold by the conspirators a day *before* it was purchased by them, and Petitioner conceded at his sentencing that this sale involved a real victim of a fraudulent scheme. (Dkt. No. 408, Sentencing Tr. 408 44:2–7, 91:16–24.) There is little doubt that Defendants conspired to distribute the net *profits* from their wire fraud scheme through money laundering.

In short, the *Santos* "merger" escape hatch simply was not available to Petitioner, given the nature of the conspiracy he participated in. Appellate counsel's failure to raise *Santos* until the reply brief thus did not prejudice Petitioner. For this reason, any claim for ineffective assistance of appellate counsel must be dismissed.

## IV. CONCLUSION

Petitioner's ineffective assistance of trial counsel claims require preclearance by the First Circuit, under the holding in *Pratt,* because they could have been raised as claims for relief in his first petition. Petitioner's ineffective assistance of appellate counsel claims do not require preclearance, but Petitioner, for the reasons stated, cannot show that he was prejudiced by his appellate counsel's failure to raise the *Santos* argument in his initial briefing.

For the foregoing reasons, Petitioner's motion to vacate under 28 U.S.C. § 2255 (Dkt. No. 477) is hereby DENIED, and

---

**3.** This is in contrast to the gambling operation at issue in *Santos* where the defendant had runners, collectors, and winners to pay off in order to continue the operation.

the petition is ordered dismissed. This case may now be closed.

It is So Ordered.

